JAMES D. CARLOUGH, CONTESTANT, v. ABRAM H. ACKER-
MAN, INCUMBENT.

Submitted July 5, 1906—Decided November 12, 1906.

1. There is nothing in the Election law of this state that prevents a voter from writing on an official ballot the name of any person for whom he desires to vote for any office the name of which is printed on such ballot; or, if the name of any office to be filled at such election be not printed on such ballot, from writing also the name of such office on such ballot in conjunction with the name of the person for whom he desires to vote to fill said office.

2. At an election at which the office of borough mayor was to be filled, the writing of the words "For Mayor, Charles S. Roswell," upon official ballots on which the name of such office had not been printed, did not constitute such ballots "marked ballots" within the meaning of section 58 of the Election law.

3. Under section 58 of the Election law, the reprobated mark must be "other than is permitted by this act." It is not enough that such mark distinguishes the ballot or renders it capable of identification.

4. Section 59 of the Election law construed.

5. The case of *Ransom* v. *Black,* 25 *Vroom* 446, explained.

On appeal.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON and SWAYZE.

For the appellant, *Peter W. Stagg.*

For the incumbent, *Ernest Koester.*

The opinion of the court was delivered by

GARRISON, J. This appeal brings up the judgment of the Bergen County Circuit Court in a contested election case. The contest, which is over the office of chosen freeholder for the township of Orvil, is confined to seventy-three ballots cast in the borough of Allendale, a voting district of said township. The claim of the contestant is that these seventy-three ballots were marked within the statutory proscription. If this contention is sustained the result of the election will admittedly be changed, hence the question presented for decision is whether these seventy-three ballots were so marked, and this question, in turn, depends for its solution upon whether the words, "For Mayor, Charles S. Roswell," written in black ink or pencil upon each of these ballots, constituted such reprobated mark. The contestant would also include in this statement the further circumstance that the handwriting upon nearly all of these ballots was the same, and that it was the writing of a person named in the testimony who was not a voter in the district in which the ballots were cast—circumstances which, if true, are, as it seems to me, wholly immaterial. It further appears, and this circumstance is material, that one of the offices to be filled in the borough of Allendale at that election was that of mayor, and that the official Republican ticket, as printed and issued by the proper public officers, did not contain the name of such office. These tickets, to the number of seventy-three, with the name of the office and the name of a person to fill it, to wit, "For Mayor, Charles S. Roswell," written upon them, constitute the ballots under consideration.

. The precise question, therefore, is whether these additions were prohibited marks that rendered these ballots void and "not to be counted for any candidate named thereon." The language of the statute which is said to require this result is as follows:

"58. If any ballot voted at any election shall have thereon, either on its face or back, any mark, sign, designation or device whatsoever, other than is permitted by this act, whereby such ballot can or may be identified or distinguished from other ballots cast at such election, such ballot shall· be absolutely void, and shall not be canvassed or counted for any candidate named thereon." *Pamph. L.* 1898, *p.* 267, § 58.

It will be observed, as was pointed out in the opinion of this court in *Bliss* v. *Woolley,* 39 *Vroom* 51, "that the mark or device proscribed by this language is any that is not permitted by the act in question, to wit, the Election law." The words, "For Mayor, Charles S. Roswell," constitute a fragmentary phrase made up of two names—one of an office and the other of a person—but of neither of these names can it be said that it is not permitted by the Election law to be on the ballot. On the contrary, such is the customary, if not the invariable, manner in which the will of the voter is made manifest. In fact, it is just this conjunction of the name of a person and the name of an office that constitutes a ballot, hence if these names had been printed on the ballots it could not have been questioned that the Election law permitted them to be there. So that the ultimate question presented by this appeal is whether the circumstance that these names are written instead of printed makes them "other than is permitted by this act," and this narrows down to the single question whether the name of the office may be written upon the ballot, for as regards the privilege of the voter to write on his ballot the name ·of a person for whom he desires to vote there can be no question. Section 59 of the Election law reads as follows:

"59. Nothing in this act contained shall prevent any .voter· from erasing from his ballot any name or names thereon

printed, or from writing or pasting thereon the name or names of any person or persons for whom he desires to vote for any office or offices."

This is an express legislative sanction of the voter's right to place on his ballot the name of the person for whom he desires to vote, and if it were not for a *dictum* in the opinion filed by Mr. Justice Dixon in this court, in the case of *Ransom* v. *Black,* 25 *Vroom* 446, I should have no hesitation in construing the concluding clause of this paragraph to include the right of the voter to write on his ballot the name of the office to be filled as well as that of the person he desired to vote for to fill it, whenever such office was to be filled at such election and the name of such office had not been printed on the official ballot. But the opinion in question, although in the nature of a dissent in this court from the ground of decision stated in the prevailing opinion, was adopted by the Court of Errors and Appeals as its opinion upon the affirmance of the judgment of the Supreme Court (*Ransom* v. *Black,* 36 *Id.* 688), and in that opinion this language is used, speaking of the statutory provision now under consideration, then the fortieth section of the Election law: "Section 40 of the act says: 'Nothing in this act contained shall prevent any voter from erasing from his ballot any name or names thereon printed, or from writing or pasting thereon the name or names of any person or persons for whom he desires to vote for any office.' Independent of the constitutional question, this language gives the right to erase any name or names printed on the ballot. Why not the name of the party or principle? The voter is permitted to *write* or paste on the ballot *only* the names of *persons,* but he may erase any name, of person or *office,* or of party or principle."

This declaration that the voter is permitted to write on the ballot only the names of persons was entirely *obiter,* and was evidently not intended as a judicial deliverance upon the proper construction of that important clause. The question before the court in that case, and the only question in the case, was what might the voter lawfully erase from his ballot

—or, to be more specific, whether he might erase the name of the political party that stood at the head of the ticket. In the decision of this question the court was not called upon to decide what a voter might lawfully write on his ballot, and its decision of the question that was before it did not rest upon any line of reasoning based upon the consideration of the question that is now before us. I am correct, therefore, in saying that the language quoted from that opinion was *obiter*, and if this is so I am also right in assuming that when the Court of Errors and Appeals affirmed the judgment in Ransom *v.* Black, "for the reasons given in the opinion of Mr. Justice Dixon in the Supreme Court," it adopted the decision thus indicated and its *ratio decidendi*, but not *obiter* expressions contained in the opinion that in nowise conduced to such result or to the reasoning by which it was reached. Whatever hesitation I may feel in disregarding the statement in question is due not to my doubts as to the unsoundness of its construction of the Election law, but solely to the fact that our decision in the present case is not subject to judicial review. *Pamph. L.* 1894, *p.* 491; *O'Brien* v. *Benny*, 29 *Vroom* 189.

The matter at stake, however, in the pending litigation is not merely the possession of a disputed office. It involves the broad question of the disfranchisement of voters through inadvertence or by the neglect or contrivance of the public authorities who are charged with the duty of forwarding the exercise of that franchise. For it is obvious that if when the name of an office which is to be filled at an election is omitted from the official ballot the voter may not supply such omission, he is as surely disfranchised as if his ballot had been refused at the polls or had not been counted when lawfully cast. Yet such disfranchisement must have been the legislative intent if the *dictum* referred to be taken to constitute the construction of such legislation adopted by the court of last resort. It is this consideration that leads me to regard the construction of the legislative will upon this subject as still open. Thus regarded, my reading of the Election law is that the ballots with which it deals are made

up of two classes of names—that is, names of offices to be filled and names of persons to fill them—each of which is therefore permitted (if so mild a term can be used) to be on the ballot; that the fifty-ninth section does not purport to rehearse all that the act permits to be on the ballots, but, on the contrary, is confined by its terms to an express mention of certain things that are not prevented, *i. e.*, prohibited by the act from being placed upon the ballot by the voters themselves; hence when in this connection the voter is informed that nothing in the act prevents him from writing on a ballot "the name or names of any person or persons for whom he desires to vote for any office or offices," permission is given to the voter, as it seems to me, to place on the ballot in writing of a prescribed nature the name of the person for whom he desires to vote for any office in such manner that the desire he is authorized to express shall be made manifest in the manner in which such desire is always manifested upon ballots—that is, by the name of the person voted for appearing in conjunction with the name of the office to be filled. If the name of the office to be filled be already on the ballot, the voter's right is to indicate his desire by placing the name of a person under the name of such office; but if the name of the office has been omitted from the ballot, the voter is not prevented, by force of the statutory language under consideration, from voting to fill such office, but by the terms of the act may write on the ballot the name of the person he desires to vote for to fill said office, which, by necessary implication, in such case, includes the addition in writing of the name of the office to be filled. If this is not the proper construction of this statutory language, the legislature intended by it one of two things—either that the voter should be disfranchised by an accident or at the will or by the neglect of municipal clerks, or else that his remedy should consist in doing a purely nugatory act, namely, writing the name of a person on a ballot that did not and could not indicate what office such person was desired to fill. As against this imputation of legislative fatuity the circumstance relied upon in Ransom *v.* Black, namely, that in

speaking of what may be erased, "name or names" is used, while in speaking of what may be written the language is "name or names of any person or persons," is utterly inadequate to support the construction that is based upon it. Moreover, such construction leaves entirely out of consideration the words "for whom he desires to vote for any office or offices," which, as has already been sufficiently indicated, are of the very essence of the legislative scheme if it was not intended to work disfranchisement. The natural explanation of the distinction made in the statute between what a voter may erase from the official ballot and what he may add to it is probably to be found in the circumstance that if the names of both office and person are printed the erasure of the name of the person is a complete negation of the voter's desire to vote for such person for such office, whereas if both of these names are omitted the desire of the voter can be expressed only by adding to the ballot the names of both person and office. The notion that the legislature intended to provide for the erasure by the voter of the name of an office seems to me to be fanciful, for if the name of no person be printed under such office the voter could have no possible interest in erasing the name of the office, whereas if the name of a person be so printed the obvious remedy of a voter who did not desire to vote for such person is to erase the name of the person, not to erase the name of the office.

I find myself, therefore, entirely unable to accept the *dictum* in Ransom *v.* Black, either as an authoritative precedent or as a correct construction of the Election law. The spirit that leads courts to resist narrow constructions of statutes that lead to practical disfranchisement is well expressed in the next succeeding paragraph of the opinion in Ransom *v.* Black: "The narrow construction of my associates fastens upon the exercise of a right that should be encouraged, a condition which is distasteful and deterrent to some voters, and which cannot effect any beneficial result. Such a construction should therefore be rejected." If for the words "distasteful and deterrent" the word "prohibitory"

be substituted, this vigorous language of Mr. Justice Dixon is strictly applicable to the present juncture. More than ten years after the decision in Ransom *v.* Black the Court of Errors and Appeals, speaking through Mr. Justice Fort, said in reference to the spirit in which a court should approach the question of disfranchising voters upon narrow constructions of regulative statutes: "The right of suffrage is too sacred to be defeated by an act for which the voter is in no way responsible, unless by the direct mandate of a valid statute no other construction can be given."

Construed in the light of these judicial expressions, our conclusion in the present case is that the Election law permitted the writing of the words "For Mayor" upon the ballots under review, and hence such words were not a mark or device that rendered the ballots void. This being so, the question whether by reason of such marks such ballots were rendered capable of identification or distinguishable from other ballots is immaterial, for it is only when the mark is otherwise than is permitted by law that the question of the effect of such mark becomes of moment. Neither upon this appeal can we give any effect to the argument that is based upon the fact, if a fact it be, that the writing on many of these disputed ballots was in the same hand. This argument requires a determination of several questions of fact to be found by the Circuit Court, whereas the appeal to this court is upon questions of law only, and the legal presumption is that the Circuit Court resolved all the pertinent facts in conformity with the judgment that it has pronounced. *Hackett* v. *Mayhew,* 33 *Vroom* 481.

The circumstance dwelt upon at length by the appellant in his brief, namely, that the writing on the ballot is that of a person other than the voter, is without consequence if the voter adopted the ballot with the writing on it and thereby made it his, and upon this appeal such must be taken to be the fact.

Finding no error in the result reached in the Circuit Court, its judgment is affirmed.