**TEXAS & N. O. R. CO. v. H. & C. NEWMAN, Inc. (No. 8583.)**

(Court of Civil Appeals of Texas. Galveston. March 12, 1925. Rehearing Denied April 16, 1925.)

1. **Carriers** 91—Repayment by, and redelivery to shipper of bills of lading for cotton, on failure of carrier to complete delivery, held not repurchase.

Where delivery of shipment of cotton could not be effected by carrier by reason of quarantine, repayment by shipper of money received from consignee and redelivery by latter of bills of lading to shipper held not to constitute repurchase of cotton so as to make return to shipper a transaction unconnected with original shipment.

2. **Evidence** 65 — Citizens charged with knowledge of law.

Citizens of state, being presumed to know the law, could be charged with knowledge that

state had placed quarantine on cotton coming from another state.

3. **Carriers** 91—Carrier not relieved from failure to deliver by consignee's payment of draft.

That consignee of cotton, on which state had placed quarantine, had paid draft for shipment held not to relieve carrier of liability to shipper, under contract for shipment, for failure to effect delivery.

4. **Carriers** 86—Contract discharged only on tender to consignee under conditions enabling him to take possession.

Ordinarily, freight transportation contract by carrier is completely performed when freight is carried to destination and tendered to consignee, but tender must be made under conditions enabling consignee to take possession.

5. **Carriers** 94(4)—Carrier responsible for freight charges caused by failure to deliver, due to conditions of which it had knowledge.

Where carrier, having knowledge of quarantine on cotton from certain state, contracted to deliver shipment of such cotton without informing shipper of quarantine, and it failed to effect delivery, shipper held entitled to recover freight charges to destination and from there to nearest accessible point at which he could regain possession.

6. **Carriers** 186—Carmack Amendment sufficient to include damages for freight caused by carrier's failure to affect delivery.

Under Carmack Amendment (U. S. Comp. St. §§ 8604a, 8604aa), shipper is entitled to damages resulting from payment of freight to destination and back to nearest accessible point for regaining possession, on failure of carrier to effect delivery.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Action by H. & C. Newman, Incorporated, against the Texas & New Orleans Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, Garrison & Watson, and R. L. Arterbury, all of Houston, for appellant.

Fulbright, Crooker & Freeman and Geo. Fletcher Howard, all of Houston, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against appellant to recover damages in the sum of $2,961.92.

For cause of action plaintiff's petition alleges in substance that on April 24, 1920, it delivered to defendant at Houston, Tex., for shipment to Magnolia, Miss., 400 bales of cotton, and again, on April 29, delivered to defendant, at said point of shipment, 100 bales of cotton for shipment to same destination; that for the convenience of the parties this cotton, which was accepted for transportation by defendant, was shipped in

the name of Wm. D. Cleveland & Sons, and defendant issued bills of lading for the cotton to William D. Cleveland & Sons, consigned to their order at Magnolia, Miss., with the notation thereon, "Notify Magnolia Cotton Mills"; that said bills of lading as executed were in regular form contained in the tariffs, and by virtue of the execution and delivery of said bills of lading and the acceptance of the said shipments of cotton for transportation to Magnolia, Miss., the defendant, Texas & New Orleans Railroad Company, thereby agreed and promised and became obligated and bound to deliver said cotton at Magnolia, Miss.; that the defendant, Texas & New Orleans Railroad Company, failed and refused to deliver the said cotton or any part thereof at Magnolia, Miss., the point of destination named in said bills of lading, and thereby failed and refused to fulfill its agreement or discharge its obligation to deliver said cotton at said point of destination, Magnolia, Miss.; that because of the failure and refusal of the defendant to deliver said cotton at point of destination the plaintiff was requested by the defendant to furnish instructions for the disposition of said cotton; that the plaintiff instructed the defendant to deliver said cotton to the plaintiff at New Orleans, La., that being the most advantageous point at which plaintiff could dispose of said cotton, and the nearest available point at which it could be delivered to plaintiff; that the plaintiff had been required to pay to the defendant and its connecting carriers the sum of $3,787.63, freight charges, including war tax on said 500 bales of cotton, being the regular freight charges from Houston, Tex., to Magnolia, Miss., and return from Magnolia, Miss., to New Orleans, La.; that the freight from Houston, Tex., to New Orleans, La., on said 500 bales of cotton was $825.71; that the plaintiff and its connecting carriers' freight from New Orleans, La., to Magnolia, Miss., and return, amounted to the sum of $2,961.92.

The defendant answered by a general demurrer and general denial, and especially pleaded that it was true that Wm. D. Cleveland & Sons did deliver to the Texas & New Orleans Railroad Company, the initial carrier, at Houston, Tex., said 500 bales of cotton, and requested that said cotton be transported to Magnolia, Miss.; that said defendant accepted said cotton for shipment, and issued its bills of lading in favor of Wm. D. Cleveland & Sons, and that said cotton was consigned to Wm. D. Cleveland & Sons, Magnolia, Miss., notify Magnolia Cotton Mills; that the defendant, Texas & New Orleans Railroad Company, the initial carrier, transported said cotton from Houston, Tex., to New Orleans, La., and there delivered it to its connecting carrier, the Illinois Central Railroad Company, the delivering carrier, and that the said cotton was by said Illinois Central Railroad Company trans-

ported with reasonable dispatch to Magnolia, Miss., and was there tendered to the consignee; that the consignee refused to accept said cotton, and that the delivering carrier was unable to make actual delivery of the cotton to the consignee, for the reason that the state of Mississippi had placed a quarantine prohibiting the delivery of any cotton within the state of Mississippi originating from any point in Texas; that, when said delivering carrier, the Illinois Central Railroad Company, could not make an actual manual delivery of said cotton to the consignee, it notified the consignor, William D. Cleveland & Sons, and asked for instructions; that the delivering carrier was then instructed by the plaintiff, H. & C. Newman, Incorporated, to return said cotton to the plaintiff at New Orleans, La., and that said cotton was by said Illinois Central Railroad Company transported from Magnolia, Miss., back to New Orleans, La., and there delivered to the plaintiff; that the defendant, Texas & New Orleans Railroad Company, the initial carrier, through its connecting carrier, by transporting said cotton from Houston, Tex., to Magnolia, Miss., and there making a tender of said cotton to the consignee, had fully complied with all of the terms, obligations, and conditions of said bill of lading.

The defendant, Texas & New Orleans Railroad Company, further answered that, if there were a quarantine on in the state of Mississippi, prohibiting the delivery of cotton at Magnolia, Miss., which originated from any point in Texas, said fact was known to the plaintiff, or its duly authorized agent or representative at the time said cotton was tendered to the defendant for transportation; that the accepting of said cotton by the defendant, Texas & New Orleans Railroad Company, for transportation from Houston, Tex., to Magnolia, Miss., did not render the initial carrier, the Texas & New Orleans Railroad Company, liable for the freight charges paid by the plaintiff to the Illinois Central Railroad Company for transporting said cotton from New Orleans, La., to Magnolia, Miss., and from Magnolia, Miss., back to New Orleans.

Defendant further answered by way of special exception that the initial carrier, the Texas & New Orleans Railroad Company, would not be liable under section 20 of the Carmack Amendment for freight charges paid by the plaintiff to the delivering carrier from New Orleans, La., to Magnolia, Miss., and return.

In reply to this answer plaintiff filed a supplemental petition, which, in addition to several special exceptions, contains in substance the following allegations: That at the time defendant accepted the cotton for shipment to Magnolia, Miss., and issued its bills of lading therefor, it knew of the existence of the quarantine by the state of Mississippi, which prohibited the actual de-

(273 S.W.)

livery of the cotton to the consignee at Magnolia, and by reason of which the consignee was unable to there receive the cotton from defendant; that plaintiff had no knowledge of the existence of the quarantine, when it delivered the cotton to defendant for shipment, and defendant failed to inform the plaintiff that the cotton could not be received by the consignee in the state of Mississippi because of such quarantine.

The trial in the court below, without a jury, resulted in a judgment in favor of plaintiff for the sum of $2,961.92, with interest from the date said sum was paid by plaintiff to defendant and its connecting carrier.

There is no material conflict in the testimony. The evidence shows that the 500 bales of cotton were accepted by appellant for shipment to Magnolia, Miss., and bills of lading issued therefor as alleged in plaintiff's petition. At the time the cotton was accepted by appellant for shipment it had official notice from the state of Mississippi that said state had declared a quarantine against Texas cotton, and that no cotton originating in Texas could be delivered at any point in the state of Mississippi. Appellant did not inform appellee of the existence of this quarantine, and appellee did not know of its existence at the time the cotton was shipped. Appellee's manager, who resides in New Orleans, testified that he was told by some one, during the time the cotton was being delivered, by appellee's agent, at Houston, to appellant for shipment, that some newspapers had reported a quarantine by the state of Mississippi against Texas cotton, but that he did not take the matter seriously, as he thought the railroad knew what it was doing in entering into a contract for transporting the cotton. Prior to the shipment of the cotton appellee, who was engaged at New Orleans, La., in the business of buying and selling cotton, had entered into a contract with the Magnolia Cotton Mills at Magnolia, Miss., to sell them 1,500 bales of cotton. The 500 bales in question were purchased by appellee from E. T. Moore, of Rodgers, Tex., to be applied on the contract with the Magnolia Mills. At the time of its purchase by appellee this cotton was held by W. D. Cleveland & Sons, cotton factors, at Houston, Tex. Cleveland & Sons had advanced money on the cotton to Moore, and for their protection and by agreement with appellee the bills of lading for the cotton were taken out in their name and by them indorsed to appellee and a draft drawn on appellee for the purchase price of the cotton. Upon receipt of these bills of lading appellee paid the draft, and drew its draft on the Magnolia Mills for the price they had agreed to pay for the cotton, with invoices of the shipments attached. On presentation of this draft and invoices the Mag-

nolia Mills paid the draft, and appellee then delivered the bills of lading to them. When the cotton reached Magnolia, the Illinois Central Railroad, appellant's connecting carrier that transported the cotton from New Orleans to Magnolia, notified the Magnolia Mills that it was ready to deliver the cotton, but the state authorities refused to permit the cotton to be unloaded. Thereupon the Magnolia Mills notified appellee of the situation, and requested it to obtain permission from the authorities to unload the cotton. Appellee, being unable to obtain this permission repaid the Magnolia Mills, the amount it had received for the cotton, repossessed itself of the bills of lading, and instructed the Illinois Central Railroad to return the cotton to it at New Orleans.

In order to obtain possession of its cotton the appellee had to pay to the Illinois Central the transportation charges from Houston to Magnolia and from Magnolia back to New Orleans. The amount of these, in excess of the charges from Houston to New Orleans, was $2,961.92. New Orleans was the nearest available place to Magnolia, where delivery of the cotton could have been made to appellee.

The following is a sufficient statement of the substance of the five propositions presented in appellant's brief as grounds for reversal of the judgment:

It is first contended that the undisputed evidence, or at least the overwhelming weight and preponderance of the evidence, shows that the sale of the 500 bales of cotton by appellee to the Magnolia Mills Company was a completed transaction, and the title of the cotton fully vested in the purchasers when they paid the draft drawn on them by appellee and received the bills of lading, and appellee could not by a repurchase of the cotton from the Magnolia Mills acquire any actionable right against appellant under section 20 of the federal statute, known as the Carmack Amendment (U. S. Comp. St. §§ 8604a, 8604aa).

It is next contended that the transportation of the cotton by appellant and its connecting carrier from Houston to Magnolia, Miss., and its tender there to the consignee in accordance with the terms of the bills of lading, was a full and complete compliance with the contract of shipment; and that, as the undisputed facts show that both appellee and the Magnolia Mills had notice of the existence of the quarantine prior to the payment of appellee's draft by the Magnolia Mills and the tender of the cotton by the railroad at Magnolia, appellee could have no cause of action against appellant for damages caused by the inability of the Magnolia Mills to obtain possession of the cotton at Magnolia.

It is further insisted that any cause of action which appellee might have is against

273 S.W.—22

the Illinois Central Railroad, and appellant, as the initial carrier, cannot be held liable under the Carmack Amendment for the damages claimed by appellee.

[1] We cannot agree with appellant in any of these contentions. The transaction between appellee and the Magnolia Mills by which appellee, after it was ascertained that the cotton could not be placed in the possession of the Magnolia Mills at Magnolia, repaid the money it had received from the purchasers for the cotton and received back the bills of lading it had delivered them cannot be regarded as an original independent purchase of the cotton by it. The transaction was nothing more than a recognition by appellee of its inability to make actual delivery of the cotton under its contract with the Magnolia Mills, and a return of the money the purchasers had paid it on the faith of an actual delivery of the cotton into their possession when it was found that such delivery could not be made.

[2, 3] We may assume that at the time the Magnolia Mills paid the drafts drawn on them for the cotton they knew of the existence of the quarantine—being citizens of the state of Mississippi they may be held charged with such knowledge—but the evidence is not at all conclusive that at the time they paid the draft they knew the cotton for which they were paying came from Texas and could not be delivered in the state of Mississippi. If they had seen the bills of lading before paying the draft, which is not shown by the evidence, they would have known the cotton came from Texas, but, knowing this fact, their payment of the draft would not have necessarily relieved appellee of further obligation for the delivery of the cotton into their possession. They might, and doubtless did, when they paid the draft, make such payment under the belief that appellee would either obtain a permit for the delivery of the cotton or refund the money paid it. After the cotton reached Magnolia, appellee received official notice of the quarantine, and knew that, unless it could effect an actual delivery of the cotton, it was not entitled to retain the Magnolia Mills' money.

It cannot be held that by the receipt of the purchase price from the Magnolia Mills and the delivery of the bills of lading to them by appellee, and the subsequent repayment of the money and repossession of its bills of lading by appellee, it lost any right it may have had to hold appellant liable for the damages caused by its failure to carry out its contract of shipment.

[4] This brings us to the question of whether appellant breached its contract for the shipment of the cotton. It is true, generally speaking, that a contract for the transportation of freight by a railroad company is completely performed when the freight is carried to the point of destination and there tendered to the consignee; but such tender, to be sufficient to discharge the contract, must be made under such conditions as to enable the consignee to take possession of the freight. If the cotton, in this case, had reached Magnolia in locked cars, which the consignee was unable to open and take the cotton therefrom, it could not be contended that such a tender of the cotton would have been a sufficient compliance with the contract of shipment, and we think it equally clear that the tender by appellant's connecting carrier to the consignee, at Magnolia, when it knew the consignee was forbidden by law to take the cotton from the cars at that place, was not a sufficient tender to discharge the contract of shipment.

[5, 6] The undisputed evidence shows that appellant, at the time it received the cotton and contracted to transport it to Magnolia, and there deliver it to the consignee, knew that it could not be delivered at that place, and the evidence was sufficient to sustain the finding of the trial court that the appellee did not know when the contract of shipment was entered into that the cotton could not be delivered at Magnolia. In these circumstances it was the duty of appellant to inform appellee that it was forbidden by the law of Mississippi to deliver cotton from Texas in the state first named, and should have refused to receive the cotton for shipment into that state. When it failed to perform its duty in this regard, and took and transported appellee's cotton to a destination at which it knew the cotton could not be taken from its cars, it became liable for any damages thereby caused appellee which it might reasonably have anticipated would result from its failure to deliver the cotton to the consignee at the point of destination. The cost to appellee of having the cotton transported from New Orleans to Magnolia and from Magnolia back to New Orleans, which was the nearest accessible point at which it could regain possession of the cotton, was damage which directly resulted from appellant's breach of its contract and for which it should be held liable. Both appellant and its connecting carrier, the Illinois Central Railroad, were liable to appellee for the damages claimed by it, and the suit might have been brought against either or both. These railroads acted jointly in the commission of the wrong against appellee of taking its cotton and transporting it to a destination where they knew it could not be delivered, and, we think, appellant, who made the contract of shipment for itself and its connecting carrier, knowing that it could not be complied with, could be held responsible for all of the damages claimed by appellee independent of the provisions of the Carmack Amendment. If, however, appellee's right to hold appellant liable for all its damages depends upon the application of the Carmack Amendment, we think the

provisions of that statute are broad enough to include the damages claimed in this suit.

In construing the language of this statute, the Supreme Court of the United States, in the case of N. Y. P. & N. Ry. Co. v. Produce Exchange, 240 U. S. 38, 36 S. Ct. 232, 60 L. Ed. 515, L. R. A. 1917A, 193, say:

"We do not think that the language of the amendment has the inadequacy attributed to it. The words 'any loss, damage, or injury to such property,' caused by the initial carrier or by any connecting carrier, are comprehensive enough to embace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination. It is not necessary, nor is it natural, in view of the general purpose of the statute, to take the words 'to the property' as limiting the word 'damage' as well as the word 'injury,' and thus as rendering the former wholly superfluous."

It follows from the conclusions we have expressed that the judgment of the trial court should be affirmed, and it has been so ordered.

Affirmed.