CAMP et al. v. THOMAS, County Judge, et al.
No. 720.

Court of Civil Appeals of Texas. Eastland.
March 7, 1930.

Rehearing Denied April 4, 1930.

Blanton, Blanton & Blanton, of Abilene,. for appellants.

Robt. L. Bobbitt and Rice M. Tilley, both of Austin, and Coombes & Andrews, of Stam-- ford, for appellees.

HICKMAN, C. J.

The appeal is from a judgment sustaining- a general demurrer to appellants' first amend- ed original petition and dismissing the cause-

from the docket. All of appellants except T. H. Alexander and T. B. Cranston are citizens and taxpayers of Jones county. Alexander and Cranston reside in Taylor county. Just why they were made parties does not appear. The petition names as defendants the county judge and county commissioners of Jones county, the state highway engineer, and the three members of the state highway commission of Texas. No relief is sought as against the state highway engineer or the state highway commissioners; the stated purpose for naming them as defendants being, "for notice, neither mandamus nor injunction being asked against them. * * *" The petition is very long, and contains many allegations not relevant to the relief sought. We shall not therefore epitomize it, but shall point out only those allegations which we deem pertinent to the issues presented.

Road bonds to the amount of approximately $750,000 were issued in consolidated road district No. 10, Jones county. These bonds had been sold prior to the institution of this suit. The petition discloses that the order for the election at which the bonds were voted recited that the purpose of the issuing of same was to take up the balance of the already existing bonds, and "the further construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof, throughout said Consolidated Road District No. 10 of Jones County, Texas." The order did not specify that the proceeds of the bond issue should be expended on any particular road. It is alleged that, prior to the ordering of the election, there was a state highway running through this road district, being state highway No. 30, running from Abilene, Taylor county, through Hodges and Truby, to Anson, Jones county. The state highway department had assumed control over this highway and had marked it "at every crook, turn, curve, narrow bridge and road intersection." In running from Abilene to Anson this highway led out of Abilene over Ambler avenue. Prior to the ordering of the bond election, there was a general agitation in Jones county for paving highway No. 30, running from Abilene through Hodges and Truby to Anson. The county judge and county commissioners conferred with the state highway department, and under advice from it, from the Chambers of Commerce at Abilene and at Anson, and from other citizens, and acting upon their own judgment and discretion, devised the plans and methods of consolidating different road districts into consolidated district No. 10, in order to justify the voting of sufficient bonds to hard-surface said highway and make other improvements on other public roads. The county judge and county commisioners are expressly exonerated from any fraud in connection with this matter by the allegations of the petition that it was their intention and purpose that highway No. 30 should be paved out of the proceeds of said bond issue, and that its location should not be changed, except to eliminate the crooks, angles, and sharp turns, and to straighten it as much as possible. The petition then alleges that one of the highway commissioners had permitted the bonds to be sold and the proceeds thereof turned over to the commissioners' court of Jones county, and that it had been ordered by the state highway department and approved by the state highway commission that the location of state highway No. 30 should be changed so as to run out Pine street in Abilene to Hawley and thence to Anson. Follows then the allegation that the commissioners' court of Jones county was contemplating the paying out of money for rights of way for the changed route of said highway, and that, unless the county judge and county commissioners are restrained by injunction from doing so, they will proceed to change and relocate the highway out Pine street in Abilene north to Hawley, which will be more than five miles from Hodges and Truby. The relief sought is stated in this language: "Wherefore, premises considered, plaintiffs pray for writ of injunction against said Owen Thomas, County Judge, and said County Commissioners of Jones County, Texas, that they may be enjoined and restricted from spending any of said proceeds of said sale of said issue of $750,000.00 bonds on any changed location of said State Highway No. 30 that re-locates or changes it so that it does not go through Hodges, or so that it is placed more than one and a half miles east of its present location, and that they be restrained from turning same over to the State Highway Department."

■ We have made a careful study of the petition to determine upon what theory the relief prayed for was sought. Only three possible theories are suggested by the allegations. One of these theories is that the bonds were void, and, because thereof, the commissioners' court should be enjoined from spending any of the proceeds derived from their sale. A large portion of the petition is devoted to allegations that the bonds were void for different reasons. The only paragraph of the petition which states any facts sufficient to show that they were void is paragraph 18, which alleges, in substance, that, following the election, the commissioners' court duly passed and spread upon its minutes an order declaring: That "at said election there were 1783 votes cast on said bond issue; that there were ——— votes cast for the bond issue and that there were 1418 votes cast against it." This allegation is contradicted by other allegations of the petition. In paragraph 7 it is stated that "such proposal met the hearty approval of much more than a two-thirds majority of the citizens and qualified voters in the said road districts affected." In paragraph 15 it is stated that "said voters of Jones County, including these

plaintiffs, thereupon wholeheartedly supporting said proposed bond issue and helping to carry the same by a large majority." In other paragraphs of the petition the votes at different boxes are given to illustrate the large majority by which the election carried at voting boxes contiguous to the route of highway No. 30. Besides this, the petition disclosed that the bonds had been issued and sold, and the bondholders were not made parties. Under these facts and this state of the pleadings, no judgment could have been entered granting any relief to the appellants on the theory that the bonds were void, and all the allegations of the petition in regard thereto pass out of consideration.

■ Another theory upon which there were many allegations in the petition is that a member of the highway commission promised the voters that, if they would vote for the bond issue, he would assure them that he and the other members of the commission would see to it that the new route for highway No. 30 would be so designated as that it would not be farther than one and a half miles from the present route at any point. Charges of bad faith are made against this member of the highway commission, but, as noted above, no relief was sought against the highway commission in the amended petition, and this theory must pass from further consideration.

■ It was stated in argument that, in the original petition, the highway engineer and the members of the highway commission were parties defendant, and relief was sought against them; that the trial judge sustained their plea in abatement; whereupon the appellants elected to amend and, in effect, dismiss them from the suit. No appeal was predicated from the judgment sustaining the plea in abatement, but it is urged that we should consider the action of the trial court in sustaining this plea in abatement, and, in passing upon this appeal, consider both the original and the first amended original petition and both judgments of the trial court, the one sustaining the plea in abatement and the one from which this appeal was predicated. Manifestly, only one judgment is before us, and that is the one from which the appeal was perfected. The original petition had no place in the transcript, and we cannot consider it for any purpose; the only question for our determination being the correctness of the ruling of the trial court upon the general demurrer to the first amended original petition, in which no relief was sought against the highway commission.

■■ Another possible theory, and the one upon which the case was briefed in this court, is that the county judge and county commissioners were guilty of fraud, on account of which they should be enjoined from expending any money for the improvement of the highway in its changed location. The petition does contain general allegations of fraud on their part, but no specific facts which would constitute fraud are alleged. In passing upon the sufficiency of a petition to authorize the issuance of an injunction on the ground of fraud, general allegations must be disregarded, and only specific facts considered. The allegation that a member of the highway commission made representations and promises that the location of the route would not be materially changed, and that these representations and promises were made with the approval and consent and acquiescence of the county judge and county commissioners, is no allegation of fraud. These county officers may have been entirely willing for the highway commissioner to make these promises, but no fraud can be imputed to them on that account. They knew that the location of this route was a matter entirely beyond their jurisdiction. They could not know that the promises would not be fulfilled, because the engineer and the highway commission had not made any order determining such route. The petition does not negative the fact that the county judge and county commissioners would now be entirely willing to have the location of the new route at the very place which the petition alleges the highway commissioner promised to locate same.

■ It is charged in the petition that the county judge and county commissioners were guilty of fraud "in that they knew that they might thereafter change such location, and did not keep their agreement with the people." These county officers could not have known that they might thereafter change the location, because, under the law, they could not do so. They did know, and all the voters are presumed to have known, that the proper authorities might thereafter change the location.

■ But, had the petition been sufficient to allege campaign promises and agreements on the part of the county judge and county commissioners that, if the bonds were voted, no material change in the location of the highway would be made, still such allegations would not entitle appellants to the relief prayed for. Every person is charged with the knowledge of the law that commissioners' courts can be bound by their agreements only when they act as courts and by orders duly passed. No rights can be acquired as against a county by agreements with the individuals composing a commissioner's court. They are not agents with general authority to bind the public. They are public officials granted certain powers, which must be exercised in the way prescribed by the statute. If voters desire to know in advance just how the proceeds of bond issues will be expended, they must not rely upon statements by individuals who compose the commissioners court, but they must have an order duly entered on the minutes of the commissioners' court specifically designating said purposes.

A different rule would be contrary to good government and public policy. In constructing a state highway with county and federal aid, the voter is charged with the knowledge that the commissioners' court could not, if it would, control the route of such highway, and promises of individual members of such courts so to do would have no binding effect. This question is settled by many decisions.

In the case of Cannon v. McComb (Tex. Civ. App.) 268 S. W. 999, 1002, the proposition submitted to a vote of the people was general, as in the instant case, there being no order of the commissioners' court designating in advance the particular improvements to be made by the proceeds of the bond issue. The county attorney made speeches to the voters prior to the election, in which he represented that highway No. 25 would be one of the roads improved with the proceeds of the bonds. These representations were made with the sanction of the defendants for the purpose of preventing the voters from' knowing their intention to improve another road instead of highway No. 25. It was alleged in general terms that all of the defendants were prompted by motives of selfish and personal gain. It was specially alleged that the father of the county judge owned a large tract of land in which said judge had an expectancy of estate near the road proposed to be improved, and that one of the commissioners had agreed with the other commissioners to vote to improve said road rather than highway No. 25, in consideration of an agreement by the other commissioners to route another road to be improved so as to run through the vicinity in which the said commissioner owned lands. Upon the hearing all exceptions of the defendants to the plaintiffs' petition were sustained and the cause dismissed. The opinion by the Court of Civil Appeals for the Second District, after reciting the general purposes for which the bonds were voted, as shown by the records, including the order, notices, etc., used this language: "Under such circumstances, we think it well settled that the alleged representations made by the publicity committee for campaign purposes, to the effect that the proceeds of the bonds would be used for the purpose of improving highway No. 25, would not, of themselves, afford any basis for the relief sought."

In the case of Ardrey v. Zang, 60 Tex. Civ. App. 295, 127 S. W. 1114, the board of commissioners of the city of Dallas caused circulars to be issued prior to the voting on a bond issue for the purpose of building school buildings. These circulars, 12,000 in number, were distributed generally and bore the signatures of the members of the commission. One of the purposes of the bond issue, as stated in the circulars, was. the erection of a four-room building and the purchase of a site therefor in Oak Cliff. After the bonds were voted, some of the improvements men-

tioned in the circulars were erected, but the Oak Cliff building was not, and an injunction was granted by the lower court, the effect of which was to compel the board of education to erect the improvements described in the circular. On appeal the injunction was dissolved and the suit dismissed. The opinion was based upon the well-established rule that the orders and notices of election, and not campaign circulars, must be looked to in determining the powers of the board of education.

In the case of Grayson County v. Harrell (Tex. Civ. App.) 202 S. W. 160, 163, certain citizens and taxpayers of Grayson county obtained a judgment in the trial court against the county and its commissioners' court, enjoining the expenditure of funds realized from the sale of road bonds for the improvement of the "Luella Road," and requiring the expenditure of such funds in the improvement of the "Celtic Road." On appeal it was held that the action of the trial court in overruling a general demurrer was erroneous. The petition to which it was held a general demurrer should have been sustained alleged that a committee of citizens, upon the demand of the commissioners' court, prepared a map showing the location of the roads upon which it was proposed to expend the money, and that among such roads was the Celtic Road. It was alleged that the Chamber of Commerce and said committee of citizens on divers occasions thereafter, with the consent of the commissioners' court, announced to the people that the Celtic Road would be one of the roads improved, and exhibited the map disclosing the roads to be included in the plan of improvement. It was alleged that plaintiffs and other voters in the Celtic neighborhood believed such statements, and but for said representations the bond election would not have carried.

In an able opinion Justice Boyce pointed out clearly that only the orders of the commissioners' court could be looked to in determining the purposes to which the proceeds of the bond issues could be devoted. From that opinion we quote: "The court cannot delegate the exercise of this power and discretion to others, nor can it divest itself of such power by agreements in advance to exercise such discretion in any particular manner, and any agreement, the tendency of which is to preclude the court from a full and free exercise of its discretion as to the particular roads that were to be improved when the time should come to make such improvements, would be against public policy. * * * We hold, therefore, that the proposition for which the people voted could only be sought through * * * the official publication requisite to an election notice, and that such promises as are alleged by the plaintiff to have been made in this case would not bind the commissioners' court in the subsequent exercise of its discretion."

474

In the recent case of Heathman v. Singletary, 12 S.W.(2d) 150, it was held by the Commission of Appeals that, where the highway commission in good faith relocated a state highway after a bond election in order to secure federal aid, and no route was designated in the order for the election, taxpayers could not restrain the commissioners' court from appropriating and expending the proceeds of the sale of such bonds in the construction of such relocated highway.

The law is nowhere more clearly stated than by Justice Gaines in City of Austin v. Nalle, 85 Tex. 520, 22 S. W. 668, 674, 960, wherein he states: "Conceding for the sake of the argument that we could inquire into an election held strictly according to the terms of the law, we are of opinion that we could not set it aside by reason of any fraudulent representations that may have been made to the electors in order to procure their votes. Having a plain proposition submitted to them, the voters must be presumed to know its meaning and effect, and to act at their peril; and in the absence of bribery, or other like corrupt influence, in a proceeding affecting the validity of the election, no inquiry as to their motives can be permitted."

The leading cases relied on by appellant are Black v. Strength, 112 Tex. 188, 246 S. W. 79, and Moore v. Coffman, 109 Tex. 93, 200 S. W. 374. They are in no wise in conflict with the cases above cited. In them an order had been entered by the commissioners' court, wherein it exercised its discretion in advance, and, having done so, it was held that the court itself imposed a limitation on its subsequent exercise of discretion, and that, the election having been held subsequent to such order, the court had no power to change it after such election. The fact of the entering of the order by the commissioners' court clearly distinguishes those cases from the instant case.

The learned trial judge correctly sustained the general demurrer to appellant's petition, and his judgment in so doing will be affirmed.