**CUNNINGHAM v. QUEEN et al.**

No. 10120.

Court of Civil Appeals of Texas. San Antonio.

Oct. 1, 1936.

Rehearing Denied Oct. 5, 1936.

Joe Burkett, of San Antonio, for appellant.

B. D. Tarlton and Dean B. Kirkham, both of Corpus Christi, for appellees.

MURRAY, Justice.

This suit was instituted by the appellant, Tom J. Cunningham, in the district court of Nueces county, against the appellees, Meredith Queen, as chairman, and the other appellees as members, of the Nueces County Democratic Executive Committee, seeking to compel appellees to tabulate the votes for appellant for the office of judge of the 117th judicial district of Texas cast at the run-off primary, held on August 22, 1936.

Hon. Birge Holt, who for several years past was the judge of the 117th judicial district, and whose term of office would not have expired until January 1, 1939, resigned his office as such judge after the July, 1936, primary had been held, but before the August run-off primary had taken place. No names were placed upon the official ballot of the Democratic primary held on July 25, 1936, for the office of judge of the 117th judicial district, for the reason that there was at that time no vacancy in said office, and Judge Holt was what is commonly referred to as a "hold-over" at said time.

Shortly after Judge Holt's resignation, the Governor of this state appointed, as his successor, Hon. W. B. McCampbell, and thus it became apparent that it would be necessary, at the general election to be held on November 3, 1936, to elect a judge for the 117th judicial district. The officers of the Nueces County Democratic Executive Committee took no notice of this fact, as far as the August run-off primary was concerned, and did not place the name of the office, or the name of any candidate, upon the official ballot of the run-off primary, August 22, 1936.

However, eighteen voters at the August primary wrote the name of the office, that is, judge of the 117th judicial district, on the ballot and also wrote in the name of appellant, Tom J. Cunningham, as their choice for the Democratic nominee for this office.

The chairman and officers of the Democratic Executive Committee of Nueces County refused to give any effect to these eighteen votes and declined to certify the name of Tom J. Cunningham as the Democratic nominee for the office of judge of the 117th judicial district.

Upon the trial of this case the lower court denied Cunningham the relief sought, and from that judgment he has prosecuted this appeal.

■ The question here presented is whether or not a person may be nominated to an office as a party nominee where a vacancy has occurred after the first primary, but before the run-off primary, by a small portion of the voters of the county writing the name of the office and their choice for same upon the official ballot of the run-off primary. We are of the opinion that such a nomination may not be made in this manner at a run-off primary. Article 3102, R.S.1925, reads, in part, as follows:

"*Date of primary.*—The fourth Saturday in July, 1926, and every two years thereafter shall be general primary election day, and primary elections to nominate candidates for a general election shall be held on no other day, except when specially authorized. No person shall be declared the nominee of any political party at any primary election for any State or district office unless he has complied with every requirement of all laws applicable to primary and other elections, and has received a majority of all the votes cast at such primary elections for all candidates for such office. If at the general primary election for any political party, no candidate becomes the nominee for any State or district office under this article, a second primary election shall be held by such political party, in the State or such district, or districts, as the case may be, on the fourth Saturday in August succeeding such general primary election, and only the name of the two candidates who received the highest number of votes for any office for which nomination was made at the general [primary] election shall be placed on the official ballot as candidates for such office at such second primary. The second primary election shall be conducted according to the law prescribed for conducting the general primary election, and the candidates receiving a majority of all votes cast for the office to which they aspire shall be declared the nominee for their respective offices."

It is plain from the reading of the above article that the whole purpose of the run-off primary is to have an elimination be-

tween the two candidates having the highest number of votes, but not a majority, in the first primary. Before a person is entitled to be voted for for an office in the run-off primary, he must have been one of the two high candidates at the first primary. If this were not true, it is very likely that neither candidate would receive a majority. If voters were left free to write in the name of any person they might choose in the run-off primary, there could very easily, and probably would, not be a majority for any candidate in the second primary, and thus the requirements of the law, that before a candidate can become the party nominee he must have received a majority of the votes, would prevent the party from making a nomination.

The statute plainly provides that "only the name of the two candidates who received the highest number of votes for any office for which nomination was made at the general [primary] election shall be placed on the official ballot as candidates for such office at such second primary." This provision clearly provides that the names of other candidates cannot be written in at the run-off primary.

Again, viewing this matter from a broad and common sense viewpoint, it is perfectly obvious that the voters of Nueces county did not consider the matter of nominating a candidate for the office of judge of the 117th judicial district had been submitted to them in the run-off primary. They did not find on the ballot even the name of the office, and, so far as this record affirmatively shows, only eighteen voters out of several thousand attempted to vote for a nominee for this judgeship.

■■ It is true that where the public generally know, or should know, that an election is taking place for a particular purpose and only a small minority of the voters vote in such election, that it may be declared to be the public will and a valid election; but where, as in this case, it appears that it was not generally known and understood that an election was being held for the purpose of nominating a candidate for the office of judge of the 117th judicial district, and where there was no mention of such office on the ballot, and where the plain provisions of the statute preclude the idea that such a nomination could be held at a run-off primary, then there has been no expression of the public will and no election.

The trial court properly refused appellant the relief he sought, and accordingly the judgment will be in all things affirmed.