**John R. BRYANT, Relator,**

v.

**Peter O'DONNELL, Jr., et al., Respondents.**

**No. 16137.**

Court of Civil Appeals of Texas.

Dallas.

June 15, 1962.

Rehearing Denied July 27, 1962.

Grover Hartt, Jr., Dallas, for relator.

Ralph W. Currie and Henry Wade, Dist. Atty., and James M. Williamson, Asst. Dist. Atty., Dallas, for respondents.

DIXON, Chief Justice.

With our permission Relator John R. Bryant has filed an application for a writ of mandamus to direct Respondent Peter O'Donnell, Jr., Chairman of the Executive Committee of the Republican Party of Dallas County, Texas to certify Relator as the nominee of the Republican Party for the Dallas County office of Judge, County Court at Law No. 1; and also for a writ to direct Respondent Ed Steger, County Clerk, Dallas County, Texas, to publish, post and print the name of Relator as nominee of the Republican Party for said office.

Jurisdiction of this Court is conferred by Art. 1735a, Vernon's Ann.Civ.St.

In his sworn affidavit Relator alleges that in the Republican primary election held in Dallas County on the first Saturday in May, 1962 he received a majority of the votes cast for nomination for the office of Judge, County Court at Law No. 1. Relator's name was not on the printed ballot. The office of Judge, County Court at Law No. 1, was not included on the printed ballot

among the offices for whom a nominee was to be chosen. All the votes cast for this particular office were write-in votes. Of a total of 123 votes, 111 were cast for Relator, 8 for Jim McCarthy, 2 for W. C. Graves and 2 for Giles Miller.

Relator further alleges that at a meeting of the Executive Committee held on the Tuesday next after the primary the votes were canvassed and the results were declared, but Respondent O'Donnell has failed and refused to include Relator in the list of Republican nominees for county and precinct offices, and has failed and refused to certify a list to the County Clerk with Relator's name on it.

Ed Steger, County Clerk, has answered stating that he intends to and will perform all his official duties, and that he will abide by and comply with the decision of this Court.

Respondent O'Donnell in his sworn answer states that the Executive Committee at a meeting on May 8, 1962 instructed him that he could not certify the name of any person as a nominee for any office who had not evidenced his *acceptance* of said nomination by the payment of the fee prescribed by the Committee at its meeting in February 1962. Relator herein has failed and refuses and still refuses to pay the assessment fixed by the Committee, but according to Respondent seeks to secure for himself the benefit of a nomination in a primary in which he refuses to share in the expense. Respondent then avers that because of said order he has no alternative but to decline to certify Relator as a nominee for the Republican Party. He also points out that the Committee has not been made a party to this proceeding and says that if the Committee's action was erroneous it can be corrected only in a legal proceeding in which the Committee is a party.

In additional allegations Respondent goes more into detail as to his reasons for refusing to certify Relator as a party nominee. In order to be sure that his allegations are correctly presented here we quote from Respondent's answer:

"III.

"The Dallas County Republican Executive Committee at its meeting on Tuesday, May 8, 1962, did not, as alleged by Relator, declare that he was entitled to the nomination. On the contrary, said Committee by resolution declared that it would be left to the discretion of the County Chairman and the counsel for the County Chairman to determine whether the circumstances under which votes were cast for the Relator were valid write-in votes. Respondent herein thereupon and acting under this authority from the Committee determined that the votes received by the Relator were not valid write-in votes and hence Relator did not receive sufficient votes to nominate.

"IV.

"In connection with the preceding paragraph Respondent shows that the circumstances are these:

"The office of Judge, County Court at Law No. 1 was not on the ballot. This was because of a deliberate decision on the part of the Dallas County Republican Committee to place no offices on the ballot save those for which candidates had filed their request. No request was received by the Committee for a place on said ballot.

"It was not generally announced to the public nor to those participating in the Republican Primary that the office of Judge, County Court at Law No. 1 was open for nomination. There were cast in said Primary approximately 21,750 votes. Out of said number only 123 votes were cast for Judge, County Court at Law No. 1, 10 of those were cast for the Democratic candidates for said office. In each instance the voter had to write in the title of the office as well as the name of

the person for whom he wished to vote. The fact is that the public neither knew, nor had any basis for supposing, that this office was one for which nomination was to be made at said Primary election. This initial determination was made by Respondent herein pursuant to authority given to him by the Dallas County Republican Executive Committee. Acting under the authority thus given Respondent herein determined that the voters generally did not know nor should they have known that an election for the office was taking place. Consequently, the votes cast in said office were not valid write-in votes and Relator is not entitled to a certificate of nomination.

## "V.

"Entirely outside of the action of the Committee and your Respondent as hereinabove set forth, Respondent now shows to the Court that as a matter of fact the voters participating in the Republican Primary Election did not know, nor should they have known, that an election for office of Judge, County Court at Law No. 1 was to take place at the Primary Election. Consequently, the Relator is not entitled to a certificate of nomination since the write-in votes were invalid, absent a showing that the voters generally knew, or should have known, that an election for this office was taking place."

■ Under the undisputed facts presented by the record before us it is our opinion that the Republican Executive Committee members are not necessary parties to Relator's application. In his sworn application Relator says that the Executive Committee met, canvassed the returns and the results were declared. It is not denied that Relator by write-in votes received 111 of the total of 123 votes cast for the office in question. Respondent merely denies that the Committee declared Relator was entitled to the nomination. It is nowhere claimed that the Committee

declared that Relator was *not* entitled to the nomination, or that the Committee declared the votes received by Relator were *not* valid write-in votes.

■ In one place in his answer Respondent alleges that the Committee instructed him "that he could not certify the name of any person as a nominee for any office who had not evidenced his *acceptance* of said nomination by the payment of the fee prescribed by the Committee at its February 1962 meeting." (emphasis ours). We know of no statute or law which requires a nominee to pay a fee for the "acceptance" of the nomination. The Committee's order, based on a legal conclusion so wholly erroneous, must be considered void.

■ In another place in his answer Respondent says that the Committee by a resolution declared it would be left up to the County Chairman and Counsel for the County Chairman to determine whether under the circumstances the votes cast for Relator were valid write-in votes. V.A.T. S. Election Code, Art. 13.25 provides that the Committee shall have power to exclude any vote that is "prima facie illegal," but it goes further and expressly provides that "any vote involving a question of law, or mixed question of law and fact shall not be determined by the Committee." No facts are shown in this record which will support a conclusion that the votes received by Relator were *"prima facie illegal"*. Therefore, the Committee would have gone beyond its power if it had declared invalid the votes received by Relator. Certainly the Committee could not delegate to the County Chairman powers which the Committee itself did not possess.

In short, it is undisputed that the Committee met and tabulated the votes in the primary election. It is undisputed that Relator received 111 write-in votes out of a total of 123 votes cast. It is undisputed that the Committee did *not* declare (and had no grounds for declaring) that the votes received by Relator were prima facie invalid. It is undisputed that the County

Chairman has undertaken to exercise a purported discretion to declare the votes for Relator invalid. The record does not show that the Committee failed in any way to discharge its duties under V.A.T.S. Election Code, Art. 13.24 except insofar as it attempted to grant Respondent O'Donnell discretionary authority to declare invalid the votes cast for Relator. As we have said, such attempted authorization must be considered void. Therefore, the Committee is not an indispensable party to this proceeding. Its attempted authorization, being void, may be ignored without having the Committee made a party herein.

Before discussing the other specific issues presented by Respondent in his answer and brief we think it well to pause to consider some of the general principles pertaining to the right of the voters to participate in elections. Art. 1, § 2, of the Bill of Rights of the Constitution of Texas, Vernon's Ann.St. includes this provision: "All political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit."

We quote from 9 R.C.L. 1088: "The dormant idea pervading the primary law is the absolute assurance to the citizen that his wish as to the conduct of the affairs of his party may be expressed through his ballot and thus be given effect, whether it is in accord with the wishes of the leader of his party or not, and so shall be put in effective operation in the primaries. In other words the scheme is to permit the voters to construct the organization from the bottom upwards, instead of permitting leaders to construct it from the top downwards."

We quote from the opinion in Gilmore v. Waples, 108 Tex. 167, 188 S.W. 1037, where our Supreme Court speaking through Chief Justice Phillips said:

"It is the undoubted right of a political party to make nominations for the elective officers of the people. The Legislature has the authority to pre-scribe reasonable methods to be employed for the purpose; but it does not possess the power to absolutely prohibit any nomination being made. Such an attempt would constitute an arbitrary interference with the liberty of the people to freely associate themselves for the purpose of expressing such choice for their elective offices as they might select and for reasons they might see fit."

In the instant case Respondent Peter O'Donnell, Jr. Republican County Chairman, is a person well known and highly respected in Dallas County. We do not doubt his good faith. But if the Legislature cannot prohibit nominations being made certainly Respondent cannot do so, and neither can the County Executive Committee.

Now we come to the other particular questions raised by Respondent O'Donnell. In his answer and brief he takes the position that the 111 write-in votes cast for Relator are invalid votes for two reasons: (1) Relator has not paid and refuses to pay the fee set by the Committee in order to have his name appear on the primary ballot as a candidate for the nomination, thereby failing to pay his pro-rata share of the expenses incident to the conduct of the primary, therefore as matter of equity he does not come into court with clean hands; and (2) It was not generally announced to the public nor to those participating in the Republican Primary that the office of Judge, County Court at Law No. 1 was open for nomination, therefore as a matter of fact the voters participating in the Primary did not know, nor should they have known that an election for nominee to the office was to take place.

■ We are unable to agree with appellant that Relator is not entitled to have his name certified as the nominee of his party because he has not paid and refuses to pay the fee prescribed by the Committee. It has been held that one whose name did not appear on the printed ballot and who

did not pay any of the expenses of the primary, but who received a majority of the votes cast when his name was written in, was entitled to be certified as the nominee of his party. Dunagan v. Jones, Tex.Civ. App., 76 S.W.2d 219. In reversing and rendering the judgment of the trial court, the appellate court in the above case stated:

"The purely personal rights of the candidate in the respect mentioned is quite apart and distinct from and does not measure the right of the voter to indicate his choice of a person for the nomination of a particular office. There is a well recognized difference between the rights and duties of candidates in having their names printed on the official ballot, and the legal right of the voters in choosing their nominees on the day of the general primary election."

V.A.T.S. Election Code, Arts. 13.08, 13.-12, 13.14 and 13.15 provide the method to be followed by the Committee in estimating the expenses of the primary, provide that written requests to have a candidate's name placed on the official ballot must be filed by a certain date, provide for the Committee to make up the official ballot and provide that each candidate must pay his assessed apportionment of the estimated expenses in order to have his named placed on the official ballot. All these steps are to be taken prior to the election and undoubtedly refer to those who have filed their written requests for their names to be placed on the official ballot. Relator did not file a written request that his name be placed on the official ballot. The record does not show that he was a declared candidate. The above named statutes cannot properly be interpreted to deny the voter his right to write-in the name of a person of his choice to be the party nominee, though his write-in choice did not request his name to be placed on the official ballot, and did not pay a filing fee. We know of no statute which requires a nominee to pay a filing fee after a majority of the voters for an office have written in his name as their choice.

■ Neither do we see any merit in Respondent's contention that the write-in votes cast for Relator were invalid because as a matter of fact the voters in the Republican Primary did not know, nor should they have known, that an election for Judge, County Court at Law No. 1 was to take place. We do not believe a fact question was raised by such assertion. The statement is in the nature of a conclusion of fact or an opinion unsupported by any basic facts in the record.

Apparently Respondent attempts to base his contention on the fact that neither the title of the office of Judge, County Court at Law No. 1, nor the name of any candidate for that office appeared on the official ballot. But this does not seem to us to be evidence that the Republican voters did not know, nor should they have known, that they could write-in the name of their choice as nominee for the office. The only express authority cited by Respondent is Opinion of the Attorney General, No. 0-2576, dated August 3, 1956. The facts upon which the Attorney General based his opinion may readily be distinguished from the facts in the instant case. Moreover, the Attorney General himself concludes that the listing of the office on the ballot is not essential to the validity of election where the voters write-in both the title of the office and the name of the candidate of their choice. In support of this latter statement the Attorney General cites People ex rel. Goring v. President, Etc., of Village of Wappinger's Falls, 144 N.Y. 616, 39 N.E. 641; Carlough v. Ackerman, 74 N.J.L. 16, 64 A. 964, and State ex rel. Shriver v. Hayes, 148 Ohio St. 681, 76 N.E.2d 869.

It is not to be overlooked that the official ballot in this case left blank spaces at the bottom of the ballot for the obvious purpose of giving the voters an opportunity to write-in both the titles of offices and the names of those they wished to be the party nominees, thus recognizing the right of the voters to cast such votes. Neither is it to be overlooked that 123 voters did know, and took the time and trouble to write-in

both the title of the office and the names of their choices for the nomination.

It would be to embrace a dangerous doctrine indeed if we were to hold that party leaders may deny party members the right to vote for nominees for a public office merely by leaving the title of the office off the official ballot. We shall not so hold.

It would also be to embrace a dangerous doctrine to hold that party leaders may exercise their own discretion in disallowing votes on the ground that in the opinion of the party leaders the voters were not sufficiently well informed to know that they may vote for certain offices. We shall not so hold.

■ We shall not presume that Dallas County Republican voters were ignorant of their right to vote in 1962 by write-in for their choice of a nominee for the office here involved. The Constitution of Texas in connection with the transition from two to four year terms as provided in Art. 16, §§ 64 and 65 as amended provides for election for the offices of Judge, County Court at Law to be held in 1954 and each fourth year thereafter. This would mean that said offices were to be voted on in 1962. The presumption is in favor of a knowledge of the law, not against it. Texas & N O R Co. v. H. & C. Newman, Tex.Civ. App., 273 S.W. 335, (Syl. 2); E. H. Stafford Mfg. Co. v. Wichita School Supply Co., 118 Tex. 650, 23 S.W.2d 695; Camp v. Thomas, Tex.Civ.App., 26 S.W.2d 470, (Syl. 7); Baxter v. Jarrell, Tex.Civ.App., 34 S.W.2d 315, (Syl. 4); State v. Perlstein, Tex.Civ.App., 79 S.W.2d 143, (Syl. 10).

In view of such presumption we hold that if the voters did not know their rights in this regard, as a matter of law they should have known them. And that is one of the tests laid down in Cunningham v. Queen, Tex.Civ.App., 96 S.W.2d 798, relied on by Respondent.

■ The mere fact that a comparatively small number of voters exercised their write-in rights is no reason for disallowing their votes. In Carpenter v. Longuemare, 153 Tex. 439, 270 S.W.2d 457 the question arose whether five write-in votes would be counted. The two leading candidates received 1,726 and 1,724 votes respectively. Our Supreme Court held that the five write-in votes must be counted, though their number was small in proportion to the total number of votes cast and though a run-off primary election became necessary as a result of counting the five votes.

We have concluded that Relator's application should be granted and it is hereby granted. A writ of Mandamus will issue directing Respondent Peter O'Donnell, Jr., Chairman of the Republican Executive Committee to certify the name of John R. Bryant as the Republican nominee for the office of Judge, County Court at Law No. 1, Dallas County, Texas, and a writ will also issue to the County Clerk of Dallas County, Texas directing him to publish, post and print the name of Relator upon the official ballot as the Republican Party's nominee for said office.