**PARKEM INDUSTRIAL SERVICES, INC., Appellant,**

v.

**Don GARTON and Danny Tate, Appellees.**

**No. 9255.**

Court of Civil Appeals of Texas, Amarillo.

June 24, 1981.

Rehearing Denied Aug. 5, 1981.

Harman & Harman, William M. Harman, and Allen R. Stroder, Odessa, for appellant.

Ochsner & Baughman, Harold W. Ochsner, Amarillo, Cecil M. Pruett, Borger, for appellees.

DODSON, Justice.

Parkem Industrial Services, Inc. ("Parkem") filed this action against two of its former employees, Don Garton and Danny Tate, seeking a temporary restraining order, a temporary injunction and a permanent injunction to enforce a non-compete provision in their respective employment agreements. The suit was filed on 20 February 1980, and an *ex parte*, temporary restraining order enforcing the covenant was entered on the same day by the trial judge. After a hearing on 4 March 1980, the trial court granted a temporary injunction on 19 March 1980. However, after a full hearing on the merits, the trial court rendered judgment on 5 May 1980 denying the permanent injunction. Parkem appeals from the trial court's judgment denying the permanent injunction. We affirm.

The trial court made findings of fact and conclusions of law wherein the court concluded, among other things: (1) that the 5-year/250-mile restrictions contained in

Garton and Tate's employment agreements were unreasonable as to time and area; (2) that the restrictions were not reasonable and necessary to protect Parkem's business; and (3) that Parkem has not and will not be irreparably harmed if Garton and Tate are allowed to compete with Parkem.

Parkem brings six points of error. By its second point, Parkem maintains that it conclusively established irreparable harm and, in the alternative, that the trial court's failure to find irreparable harm is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

■ In this instance, one of the essential elements of Parkem's cause of action for a permanent injunction is a showing that it has suffered or will suffer irreparable harm for which there is no adequate remedy at law. *See Inman v. Padrezas*, 540 S.W.2d 789, 797 (Tex.Civ.App.—Corpus Christi 1976, no writ); *May v. Lee*, 28 S.W.2d 202, 205 (Tex.Civ.App.—Galveston 1930, no writ); *Byers v. Trans-Pecos Abstract Co.*, 18 S.W.2d 1096, 1098 (Tex.Civ. App.—El Paso 1929, writ dism'd). An "irreparable injury" is an injury which cannot be compensated or for which compensation cannot be measured by any certain pecuniary standard. *Inman v. Padrezas*, 540 S.W.2d at 797. The injury must be actual and substantial, or an affirmative prospect thereof, *Knopf v. Standard Fixtures Co.*, 581 S.W.2d 504, 506 (Tex.Civ.App.—Dallas 1979, no writ), and not a mere possibility of harm. *Arkansas Louisiana Gas. Co. v. Fender*, 593 S.W.2d 122, 123 (Tex.Civ.App. —Tyler 1979, no writ).

■ In deciding the appellant's "conclusive" contention, we must review the whole record to ascertain if the probative evidence establishes as a matter of law the asserted proposition. In this connection, the probative evidence must be sufficient to convince reasonable minds that there is no material fact issue concerning the asserted proposition; and, in a pragmatic effect, the evidence must be sufficient to support a directed verdict, a judgment notwithstanding the jury's verdict or a summary judgment on the proposition. Conversely, the assert-

ed proposition is for the fact-finder when the probative evidence in support of the proposition falls short of these legal standards or when there is any probative evidence to the contrary. *Shop Rite Foods, Inc. v. The Upjohn Co.*, No. 9231 (Tex.Civ. App.—Amarillo, June 10, 1981) (On Motion for Rehearing).

The record shows that Parkem is in the business of industrial cleaning. In particular, it cleans internal chemical build-up from plant machinery using either a high-pressure, water-blasting technique or an acidizing technique. It has offices and equipment in strategic industrial/refining areas of Texas, Oklahoma and Louisiana. Of importance in this case is its yard located in Borger, Texas. There are no trade secrets, customer lists, or cleaning techniques peculiar to Parkem's business. Parkem's business arrangements with its larger customers are by "pricing agreements", whereby an industrial plant or refinery agrees to pay Parkem a contractual price for its services; however, there is no firm agreement regarding the extent to which the customer will use Parkem's services. Rather, Parkem is used on an "as needed" basis.

Parkem obtained the services of Mr. Garton and Mr. Tate to work in its Borger yard. On 1 August 1975 and 1 December 1975, respectively, Garton and Tate executed employment agreements which are essentially identical but for the length of the term of the respective agreements and the compensation thereunder. Both contain a covenant not to compete which provides:

8.

EMPLOYEE'S COVENANT NOT TO COMPETE WITH EMPLOYER AFTER THE TERMINATION HEREOF

As a further material inducement to Employer [Parkem] to enter into this Agreement, Employee agrees that for a period of Five (5) years from the termination of this Agreement he will not, within a 250 mile radius of the location of any of Employer's yards, or sites of industrial cleaning operations, directly or indirectly

own, manage, operate, control, be employed by, participate in, be connected with, advise, invest in or render services to any business similar to the type of industrial cleaning business conducted by Employer during the term of this Agreement without the written consent of Employer.

In early February 1980, Mr. Garton informed Mr. Frank Whitfield, vice president of Parkem, that he and Mr. Tate intended to terminate their employment with Parkem and that they intended to be employed by a competing business. After negotiations failed Garton and Tate resigned on 14 February 1980.

During the negotiations, Garton and Tate affirmatively stated that they intended to be employed by or become part owners of a competing industrial cleaning business in the Borger area. Don Garton testified that they would only compete by using two high-pressure water rigs. Of particular concern is Parkem's account with the Phillips Petroleum Refinery in Borger, Texas. Mr. Whitfield testified that the income from servicing the refinery accounts for slightly over one-half of Parkem's total annual income. Mr. Garton testified that a maintenance supervisor for the Phillips Refinery agreed to allow Garton and Tate to do "some work" at the refinery after they left Parkem. Nevertheless, Phillips Petroleum has never indicated, orally or in writing, that it will discontinue using Parkem's services.

We agree that the record shows that over one-half of Parkem's total annual income at its Borger facility is derived from the Phillips Refinery account and that, if the account was lost, Parkem would probably have to reduce its investment in the Borger yard, reduce the number of its employees, or possibly even close the Borger operation altogether. However, as earlier stated, the record also shows that Phillips Petroleum has never indicated, orally or in writing, formally or informally, to discontinue using Parkem's services or to reduce its present use.

██ The only evidence of harm, or possible harm, is the testimony of Mr. Garton to the effect that he and Mr. Tate intended to work at the refinery, and that the maintenance superintendent for the Phillips Refinery promised them "some work." Furthermore, an official from Phillips Petroleum Company testified, in effect, that there is more than enough work to go around. From this evidence, the trial court reasonably could have concluded: (1) that Parkem would not lose the Phillips Refinery account if Garton and Tate entered competition; and (2) that Garton and Tate's intent to compete poses merely a possibility of harm and not an affirmative prospect of actual and substantial injury. Assuming, arguendo, that Parkem established that Garton and Tate intended to compete with it, it did not establish as a matter of law, under the appropriate legal standard set forth above, that it would suffer irreparable injury. In this instance, the question is for the fact-finder.

██ In deciding Parkem's alternative "great weight" challenge, we must consider all of the evidence in support of and contrary to the challenged finding to ascertain if such finding is so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust. *Parrish v. Hunt,* 160 Tex. 378, 331 S.W.2d 304, 305–06 (1960). Having done so, we overrule Parkem's "great weight" challenge.

In summary, we overrule Parkem's second point of error and its contentions made thereunder. Our disposition of the second point of error is dispositive of this appeal. Accordingly, the trial court's judgment is affirmed.