Tasso TRIANTAPHYLLIS, Appellant,

v.

Brent GAMBLE, Appellee.

No. 14–02–00403–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 26, 2002.

400

E. Dale Robertson, Brownsville, for appellants.

Amy Douhitt Maddux, Stephen G. Tipps, Houston, for appellees.

Panel consists of Justices FOWLER, EDELMAN, and SEYMORE.

## OPINION

WANDA McKEE FOWLER, Justice.

In this appeal, appellant, Tasso Triantaphyllis, the Democratic candidate for Judge of the 270th District Court of Harris County, seeks a reversal of the trial court's final judgment and order granting a permanent injunction. The permanent injunction directed Harris County Republican Party officials to extend the filing deadline to accept the corrected application of appellee, Brent Gamble, for the Republican primary election as a candidate for Judge of the 270th District Court, and to confirm that Gamble is the Republican Party nominee for Judge of the 270th District Court on the November general election ballot. We affirm.

### Background

The relevant background facts in this case may be found in this Court's opinion conditionally granting mandamus relief to Triantaphyllis. *In re Triantaphyllis,* 68 S.W.3d 861 (Tex.App.-Houston [14th Dist.] 2002, orig. proceeding). In that original proceeding, this court ordered that Gamble's name be removed from the Republican Party general primary ballot as a candidate for the office of Judge of the 270th District Court because his application was defective. *Id.* at 869–70. The party officials complied with our directive and removed Gamble's name.

Gamble then filed a petition for writ of mandamus in the Texas Supreme Court. Although the majority opinion disagreed with this court's construction of the Election Code, the Texas Supreme Court denied mandamus relief. *In re Gamble,* 71 S.W.3d 313 (Tex.2002). The Texas Supreme Court found that equitable reme-

dies may be available under limited circumstances to permit a candidate to amend a defective application after a statutory deadline has expired when an election official has violated a statutory duty. *Id.* at 318. The determination of a party's entitlement to equitable relief must "be decided after a hearing on the merits where interested parties have an opportunity to be heard." *Id.* A plurality of the court opined that injunctive relief in this case would be appropriate if the facts Gamble alleged, that the defect in his application was merely a clerical error that party officials should have noticed and called to his attention, were true. *Id.* The court then explained that Triantaphyllis had a right to contest those facts at a hearing. *Id.*

Accordingly, on February 20, 2002, Gamble filed a new lawsuit and requested an immediate temporary injunction hearing and an expedited hearing on his request for a permanent injunction. *See* Tex. Elec.Code Ann. § 273.081 ("A person who is being harmed or is in danger of being harmed by a violation or threatened violation of this code is entitled to appropriate injunctive relief to prevent the violation from continuing or occurring.") An evidentiary hearing was held on February 26, 2002. At the conclusion of the hearing, the trial court granted the temporary injunction and set the case for trial on April 15, 2002. Triantaphyllis filed his notice of appeal on March 1, 2002, and the interlocutory appeal was assigned to this Court on March 5, 2002. Triantaphyllis also sought a stay and expedited consideration. The Court denied the stay but granted expedited consideration, hearing oral argument on March 26, 2002. *See Triantaphyllis v.*

*Gamble,* No. 14–02–00190–CV, 2002 WL 1042076 (Tex.App.-Houston [14th Dist.] May 23, 2002, pet. filed) (not designated for publication).

On April 15, 2002, the trial court held a hearing on Gamble's permanent injunction request. The parties entered into a Rule 11 agreement stipulating that the permanent injunction request would be tried on the basis of the record that was adduced at the temporary injunction hearing.[1] Based upon this record and additional argument of counsel, the trial court granted a permanent injunction allowing Gamble's name to be placed on the general election ballot. The trial court filed findings of fact and conclusions of law in support of the injunction. Triantaphyllis then appealed from the permanent injunction. He requested, and this Court agreed, that the record from the temporary injunction appeal would be transferred to the appeal of the permanent injunction. This Court then dismissed the appeal from the temporary injunction as moot. *Triantaphyllis v. Gamble,* 2002 WL 1042076.

### Standard of Review in an Appeal of a Permanent Injunction

Permanent injunctive relief is appropriate upon a showing of (1) the existence of a wrongful act, (2) the existence of imminent harm, (3) the existence of irreparable injury, and (4) the absence of an adequate remedy at law. *Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n,* 25 S.W.3d 845, 849 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). In addition, a court determining the appropriateness of a permanent injunction should balance the competing equities, including

---

1. The temporary injunction record was supplemented with two additional stipulations. The first clarified a clerical error concerning the exhibits admitted at the temporary injunction hearing. The second was a stipulation

that Gamble had received the votes necessary in the Republican primary election to be the Republican nominee for judge of the 270th District Court.

the public interest. *See In re Gamble,* 71 S.W.3d at 317 (citing *Storey v. Central Hide & Rendering Co.,* 148 Tex. 509, 226 S.W.2d 615, 618–19 (1950)); *see also Hitt v. Mabry,* 687 S.W.2d 791, 795 (Tex.App.-San Antonio 1985, no writ); *Davies v. Unauthorized Practice Committee of State Bar,* 431 S.W.2d 590, 595 (Tex.Civ.App.-Tyler 1968, writ ref'd n.r.e.).

▮▮▮▮ In an appeal from a permanent injunction, the standard of review is clear abuse of discretion. *Tyra v. City of Houston,* 822 S.W.2d 626, 631 (Tex.1991); *Harris County Emergency Serv. Dist. No. 1. v. Harris County Emergency Corps,* 999 S.W.2d 163, 167 (Tex.App.-Houston [14th Dist.] 1999, no pet.). A trial court abuses its discretion by (1) acting arbitrarily and unreasonably, without reference to guiding rules or principles, or (2) misapplying the law to the established facts of the case. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). The trial court does not abuse its discretion when its decision is based on conflicting evidence and some evidence in the record reasonably supports the trial court's decision. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978); *SRS Products Co., Inc. v. LG Engineering Co., Ltd.,* 994 S.W.2d 380, 383 (Tex.App.-Houston [14th Dist.] 1999, no pet.).

▮▮▮▮ In addition, the trial court's findings of fact are reviewed under the same legal and factual sufficiency standards as jury findings. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex.1991). In a legal sufficiency challenge, the court considers only the evidence and inferences, when viewed in their most favorable light, that tend to support the finding under attack, and disregards all evidence and inferences to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex. 1988); *Anderson, Greenwood & Co. v. Martin,* 44 S.W.3d 200, 217 (Tex.App.-

Houston [14th Dist.] 2001, pet. denied). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

### Did party officials review Gamble's application "as soon as practicable" in compliance with Texas Election Code Section 141.032?

▮▮▮ In his first issue, Triantaphyllis argues there is no evidence to support the trial court's finding that the Republican Party failed to discharge its statutory duty to review Judge Gamble's application "as soon as practicable," as required by Texas Election Code Section 141.032(c). The Code provides that the county chair "*shall* review the application to determine whether it complies with the requirements as to form, content, and procedure that it *must* satisfy for the candidate's name to be placed on the ballot." TEX. ELEC.CODE ANN. § 141.032(a) (emphasis added). Section 141.032(c), applicable here, provides in relevant part that "[i]f an application is accompanied by a petition, the petition is considered part of the application, and the review shall be completed as soon as practicable after the date the application is received by the authority." TEX. ELEC. CODE ANN. § 141.032(c).

▮▮▮▮ These provisions are designed to provide candidates with the assistance of party officials in complying with the myriad and technical requirements for becoming a party candidate. *In re Gamble,* 71 S.W.3d at 318 ("[Section 141.032] serves as a safety net for candidates who file their applications early in the filing period, assuring that individuals willing to commit to public service will receive the assistance of party officials in complying with the myriad and technical requirements for becom-

ing a party candidate. There would be no purpose to the duty to notify the prospective candidate of defects in his or her application if the intent was not to allow an opportunity to cure those defects, particularly if the defects can be corrected before the filing deadline."). Thus, as the Texas Supreme Court recognized, "a party official's failure to follow the application review and notice requirements of section 141.032 in a timely manner is ... significant and is a consideration for a court called upon to hear a candidate's claim for equitable relief." *Id.*

In Harris County, the Republican Party primary director, rather than the party chair, was put in charge of reviewing applications. The stipulated testimony of the primary director, Kathy Haigler, was that she "assumed" that Gamble had correctly listed the office for which she knew he intended to run—Judge of the 270th District Court—and she did not review the application carefully for content. Haigler stated in her affidavit in relevant part as follows:

3. Before December 19, 2001, I knew that Brent Gamble was Judge of the 270th Judicial District Court of Harris County, Texas, and was seeking reelection to that office. Further, before the January 2, 2002 application deadline, I read Judge Gamble's petition, which stated that he is running for the office of 270th Judicial District Court Judge.

4. On December 19, 2001, I was presented with Judge Gamble's application to run in the March 12, 2002 Republican primary election for the office of District Judge. Since I knew that Judge Gamble was seeking reelection for the office of 270th Judicial District Court I assumed the petition was correct, and at that time, I did not review it carefully for

content. Neither I nor anyone else associated with the Harris County Republican Party reviewed the application for content and discovered the mistake before January 3, 2002.

5. On January 3, 2002, I was informed that Judge Gamble's application contained a clerical error. I then carefully reviewed Judge Gamble's application and noticed, for the first time, that he had misidentified the position he sought. Rather than identifying the court as the 270th Judicial District Court, he identified it as the 190th District Court. Since I knew that Judge Gamble was seeking reelection to the 270th Judicial District Court, I immediately knew that it was a clerical mistake, and notified him of the error. At that time, I informed Judge Gamble that his name would be removed from the list of Republican candidates seeking the office of District Judge, 270th Judicial District Court in the March 12, 2002 Republican primary election unless the mistake was remedied.

6. Had I inspected the application carefully when I received it on December 19, 2001 or before the January 2, 2002 filing deadline, I would have noticed the mistake and promptly notified Judge Gamble of the error.

Triantaphyllis relies on Haigler's affidavit to substantiate his contention that no evidence supports the trial court's finding that party officials failed to properly review Gamble's application "as soon as practicable." Triantaphyllis asserts the affidavit contains no evidence as to what was "practicable" at the time or that the application was not reviewed before January 2, 2002. He focuses on Haigler's statement that she "read" Gamble's petition (not his application). He fails to acknowledge,

however, her statement that neither she nor anyone else with the party reviewed the application for content before the mistake was discovered on January 3, 2002. In addition, Gamble testified that when he filed his application four years earlier, party officials immediately conducted a review in his presence. Further, Haigler reviewed the application as soon as she was informed of the error on January 3. This testimony supports an inference that it was practicable to review the application promptly, certainly within the two-week period between Gamble's filing and the deadline, but party officials did not do so.

Triantaphyllis recognizes that "[o]nly when the application and petition are compared is the discrepancy between the two revealed." According to Section 141.032(c), the petition is part of the application and the party's duty to review applies to both documents. Haigler testified she read the *petition*, which contained the correct court designation, before the filing deadline. Her affidavit provides evidence that the party failed to compare the petition and application until January 3. She acknowledged that had she done so promptly, she would have noticed the error.

Gamble filed his application two weeks before the filing deadline. The party's failure to review the application and discover the error until after the filing deadline cannot be said to be "as soon as practicable" under these facts. Even a cursory review of both the petition and application would have revealed that Gamble's application did not comply with the necessary requirements. When the error was discovered on January 3, 2002, after the filing deadline, Haigler "immediately" knew it was a clerical mistake and informed Gamble his name would be removed from the ballot.

We hold there is more than a scintilla of evidence to support the trial court's finding that the Harris County Republican Party officials failed to properly review Gamble's application "as soon as practicable." Triantaphyllis's first issue is overruled.

### Balancing the Equities

In his second issue, Triantaphyllis asserts that a balancing of the equities does not support the court's order that Gamble's name be placed on the ballot. "[T]he legislature [in section 273.081] has specifically called upon the courts to exercise their equitable powers to resolve election code violations. And when exercising such jurisdiction, a court must, among other things, balance competing equities." *In re Gamble*, 71 S.W.3d at 317.

Triantaphyllis complains that the trial court clearly abused its discretion in allowing a "questionable and minor" statutory violation by party officials to outweigh Gamble's "egregious" violation of the statute. To support his position, he points to evidence that Gamble was inattentive to his responsibility to see that his application was correct. He hired Heidi Lange as his political consultant and looked to her to prepare the application. The application listed the wrong court in two places above his signature, yet he did not notice the errors. He was not present when Lange completed the application, and he did not review it thoroughly or keep a copy of it. He did not know what was required by the Election Code. Triantaphyllis acknowledges that Gamble has been forthright and candid in admitting his mistake and accepting responsibility for it, but he argues that Gamble's candor does not shift the equities in his favor.

Triantaphyllis argues that Republican party officials may not be held responsible for Gamble's negligence. He argues that

the party officials' failure, if any, to review the application as soon as practicable, is clearly outweighed by Gamble's negligent conduct. He also asserts that Gamble has the right to run as a write-in candidate in the general election, so he would not have been irreparably harmed by the omission of his name from the ballot.

Gamble responds that the harm to *him* is irreparable, as is more fully discussed below, and the injunction caused no harm to the Harris County Republican Party. Although Triantaphyllis emphasized Gamble's culpability in filing a defective application, he pointed to no evidence that the mistake on the application was anything more than a mere clerical error that Gamble inadvertently did not notice. The Texas Supreme Court specifically held that Gamble's own fault does not bar him from obtaining equitable relief. *In re Gamble,* 71 S.W.3d at 318. The opinion pointedly recognized the appropriateness of injunctive relief on these facts:

> In this case, Judge Gamble contends that the only defect in the application is a clerical one, appearing on its face that party officials should have noticed and called to his attention well before the filing deadline expired. *Such facts, if true, state a claim for equitable relief.*

*In re Gamble,* 71 S.W.3d at 318 (emphasis added).

Gamble further argues that the only party "harmed" by the injunction is Triantaphyllis, but Triantaphyllis presented no evidence as to his harm. He has not explained how equity favors allowing a candidate to win an election by default due to a clerical error.

Moreover, any interest that Triantaphyllis may have in receiving the windfall of an unopposed general election is far outweighed by the voters' interest in electing the candidate of their choice. Texas courts traditionally have elevated the rights of voters over those of individual candidates. *See Bryant v. O'Donnell,* 359 S.W.2d 281, 286 (Tex.Civ.App.-Dallas 1962, no writ) (recognizing that the Texas Constitution provides in article 1, section 2 that "[a]ll political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit."). The right to vote for a candidate of one's choice has been described as "the essence of a democratic society." *Reynolds v. Sims,* 377 U.S. 533, 555, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). Without injunctive relief, voters would be deprived of any choice between Republican and Democratic candidates for judge of the 270th District Court in the general election. Thus, the public interest—which is paramount—strongly supports the trial court's decision to issue the permanent injunction.

In conclusion, we hold the trial court did not abuse its discretion in balancing the equities in favor of granting injunctive relief to place Gamble's name as the Republican party nominee on the general election ballot. We overrule Triantaphyllis's second issue.

### Has the appeal been rendered moot?

In his third issue, Triantaphyllis asserts that because voting had begun before the injunctive relief was granted, the case is moot. Appellate courts are prohibited from deciding moot controversies. *Nat'l Collegiate Athletic Ass'n v. Jones,* 1 S.W.3d 83, 86 (Tex.1999) (noting that prohibition against deciding moot controversies is rooted in the constitutional separation of powers principles).

Here, the temporary injunction was not issued until after ballots had been printed, ballots had been mailed to those voting by mail, and early voting by personal appearance had begun. Triantaphyllis argues

that the permanent injunction was granted to make permanent the temporary injunction improperly issued after the election had started. He asserts, therefore, that the case should have been dismissed as moot.

■ Triantaphyllis relies on a line of cases holding that an election contest becomes moot and the issue no longer justiciable once the election process begins. *See, e.g., Lerma v. Ramon*, 760 S.W.2d 727, 730 (Tex.App.-Corpus Christi 1988, no writ). Generally, a contest as to the candidacy of an applicant must be dismissed as moot where the contest cannot be tried and a final decree issued in time for it to be complied with by election officials. *See, e.g., Salazar v. Gonzales* 931 S.W.2d 59, 60 (Tex.App.-Corpus Christi 1996, no writ) (dismissing accelerated appeal of election contest as moot after early voting for general election began); *Law v. Johnson*, 826 S.W.2d 794, 797 (Tex.App.-Houston [14th Dist.] 1992, no writ) (holding appeal of denial of injunction to keep opponent off ballot was rendered moot after absentee voting began). This general rule of the law does not require dismissal in this case, however.

The cases Triantaphyllis cites are distinguishable from the situation at issue here; they concern challenges to ballots for contested races. *See, e.g., Skelton v. Yates*, 131 Tex. 620, 119 S.W.2d 91 (1938) (involving contest of election results between two Democratic candidates for same position); *Salazar v. Gonzales*, 931 S.W.2d 59 (Tex. App.-Corpus Christi 1996, no writ) (addressing election contest between two candidates for same county commissioner position); *Smith v. Crawford*, 747 S.W.2d 938, 940 (Tex.App.-Dallas 1988, no writ) (applying mootness doctrine where a contest between candidates for nomination in a party primary election could not be tried and a final decree entered in time for

compliance with pre-election statutes). In those cases, equitable relief would have interrupted the electoral process. Here, both Gamble and Triantaphyllis ran unopposed in their respective primaries. There is ample time for election officials to prepare the ballots to comply with the final decree before the November general election, causing no disruption to the electoral process.

■ The Texas Supreme Court provided relief in a situation similar to that with which we are faced in *Correa v. First Court of Appeals*, 795 S.W.2d 704 (Tex. 1990). In *Correa*, the court of appeals had ordered the candidate's application be rejected, but the Texas Supreme Court stayed the court of appeals' writ so that his name could be placed on the Democratic primary ballot after absentee voting by personal appearance had already begun. *Id.* at 705; *cf. Fitch v. Fourteenth Court of Appeals*, 834 S.W.2d 335 (Tex.1992) (determining sufficiency of candidate's application after entire primary election had already occurred, after granting stay of court of appeals' decision so unopposed primary candidate could be placed on ballot pending final decision). Thus, the beginning of early voting does not deprive a court of the power to determine whether a candidate's name should be on the ballot.

The Texas Supreme Court has explained that the only limitation on the trial court's authority to grant injunctive relief is the election schedule itself. *In re Gamble*, 71 S.W.3d at 318 & n. 17 (citing *Blum v. Lanier*, 997 S.W.2d 259, 263 (Tex.1999) (injunction that delays election is improper)). The court explained "if the matter is one that can be judicially resolved in time to correct deficiencies in the ballot *without delaying the election*, then injunctive relief may provide a remedy...." *Blum*, 997 S.W.2d at 263–64 (emphasis added).

The permanent injunction issued on April 15, 2002, does not interfere with the general election in November. The evidence in the record also demonstrates that the temporary injunction did not delay or interrupt the Republican primary election. Because the Republican Party already planned to use additional paper optical scan ballots on election day and these paper ballots had not yet been printed, Gamble's name was added to the optical scan ballots at no additional cost.

Triantaphyllis also asserts this case is barred by section 141.034 of the Election Code, which provides that "[a]n application for a place on the ballot may not be challenged for compliance with the applicable requirements as to form, content, and procedure after the day before the beginning of early voting by personal appearance for the election for which the application is made." TEX. ELEC.CODE ANN. § 141.034(a). Triantaphyllis makes no argument to support this contention. Moreover, Gamble asserts the statute is inapplicable here because he is not challenging an application for a place on the ballot. Even if he were, his lawsuit was filed before early voting by personal appearance began.

For the reasons discussed above, the issues here were not moot at the time the injunctive relief was granted, and they are not moot now. We overrule Triantaphyllis's third issue.

### Was there any evidence of irreparable harm?

■ In his fourth issue, Triantaphyllis asserts there is no evidence that Gamble would suffer irreparable harm if his name were not on the ballot. He argues Gamble has the right to run as a write-in candidate.

■ "An irreparable injury is an injury that cannot be adequately compensated for or for which compensation cannot be measured by any certain pecuniary standard." *Parkem Indus. Servs., Inc. v. Garton*, 619 S.W.2d 428, 430 (Tex.Civ.App.-Amarillo 1981, no writ). Gamble argues that without permanent injunctive relief, his name would not be listed as the Republican nominee for judge of the 270th District Court in the November general election. He vigorously asserts that the harm would be irreparable.

Even though write-in voting is permitted in the general election, a write-in candidacy is not equivalent to being the Republican party nominee. Triantaphyllis cites to no evidence that the ability to receive write-in votes could ever be the equivalent of being the Republican Party nominee. To the contrary, Judge Gamble testified that the practical effect of having no Republican nominee on the general election ballot would be that Triantaphyllis would be elected judge of the 270th District Court. This testimony was not rebutted.

Accordingly, there is some evidence to support the trial court's finding. The trial court did not abuse its discretion in finding irreparable harm. We overrule Triantaphyllis's fourth issue on appeal.

### Did the trial court err in denying Triantaphyllis's motion to abate?

■ Finally, Triantaphyllis alleges the trial court erred in denying his motion to abate. At the temporary injunction hearing, he asked the trial court to abate the case until this Court withdrew or modified its conditional order in the earlier original proceeding. He alleges that the temporary injunction conflicts with our January 31, 2001, order. He also asserts that a necessary party, the primary committee of the Harris County Republican Party, should have been be added to the suit.

■ Triantaphyllis did not move to abate the permanent injunction hearing, nor did he reurge his earlier motion at that

hearing. Therefore, by failing to make his complaint known to the trial court and securing a ruling, Triantaphyllis has not preserved error for our review in this appeal. Tex.R.App. P. 33.1(a). However, because this Court dismissed the interlocutory appeal as moot without addressing Triantaphyllis's argument on the motion to abate, in the interest of justice, we will address his contentions.

This Court previously rejected Triantaphyllis's arguments when we denied his requests for issuance of the writ of mandamus that had been conditionally granted and for a stay of the injunction pending his interlocutory appeal. We disagree with Triantaphyllis's contention that the temporary injunction and this Court's order in the mandamus cannot be reconciled. These two orders are based on different factual records in different trial court proceedings. The Texas Supreme Court held that injunctive relief was available. *In re Gamble*, 71 S.W.3d at 318. Gamble was not required to ask leave of this Court or to have our earlier order dissolved or modified before seeking that relief.

■■■ Finally, we reject Triantaphyllis's contention that the Harris County Republican Party primary committee is a necessary party to the suit. The Election Code states that the Harris County Republican Party chair is the authority responsible for having the official ballot prepared. Tex. Elec.Code Ann. § 52.002. The county chair is also the authority responsible for placing candidates' names on the ballot. *Id.* § 52.003. As numerous election cases illustrate, the primary committee is not a necessary party in this type of dispute. *See, e.g., In re Bell,* 91 S.W.3d 784 (Tex. 2002) (orig. proceeding) (county party chair and primary director); *Davis v. Taylor,* 930 S.W.2d 581 (Tex.1996) (orig. proceeding) (county party chair and secretary of state); *Sears v. Bayoud,* 786 S.W.2d 248 (Tex.1990) (orig. proceeding) (state party

chair); *Wallace v. Howell,* 707 S.W.2d 876 (Tex.1986) (orig. proceeding) (state party chair).

We hold the trial court properly denied the motion to abate and overrule Triantaphyllis's fifth issue on appeal.

### Conclusion

Triantaphyllis has not established that the trial court abused its discretion in granting the permanent injunction order allowing Gamble's name to be placed on the general election ballot as the Republican candidate for judge of the 270th District Court. Accordingly, the trial court's final judgment and permanent injunction are affirmed.

SEYMORE, J., concurring.

EDELMAN, J., dissenting.

CHARLES W. SEYMORE, Justice, concurring.

I join and fully concur with the court's analysis and opinion but write separately for emphasis. I reluctantly joined the majority when we granted appellant's first petition for writ of mandamus and issued an order directing the Harris County Republican Party to remove appellee's name from the 2002 primary ballot. Absent any claim of fraud or misfeasance, it was my considered opinion that placing appellee's name on the primary ballot was a "just and reasonable result." *See In re Bell,* 45 Tex. Sup.Ct. J. 336, 91 S.W.3d 784 (2002). At that time, I did not believe our court had sufficient guidance from the supreme court relative to application of the Code Construction Act under these facts. Consequently, I did not write a dissenting opinion. The supreme court has spoken. Mistakes on applications should not result in an absolute bar to equitable relief. *In re Gamble,* 71 S.W.3d 313, 318 (Tex.2002). A court, among other things, must balance competing equities when exercising equitable powers to resolve election disputes.

*Id.* at 317. Appellant has never answered the question posited by the court: when balancing competing equities should a court allow a candidate who files an application to be placed on the ballot in the Democrat party primary, to win a general election by default merely because the Republican party accepted a corrected application (one day after the filing deadline) from the only candidate for that position in the Republican party primary? I respectfully suggest that in deciding whether equitable remedies should be available under these unique facts, the dissenting supreme court justices in *Gamble* failed to distinguish between the instant scenario, where the applicant for a place on the primary ballot has no opponent in the party primary and the countervailing situation where two contestants are seeking nomination from the same political party.

Judge Gamble is entitled to the statutory protection afforded candidates who file their applications early because party officials had opportunity but failed to review his application and provide notice of any reason for rejection. This interpretation has been applied in other cases. *See Escobar v. Sutherland,* 917 S.W.2d 399, 406 (Tex.App.-El Paso 1996, orig. proceeding); *See also, In re Ducato,* 66 S.W.3d 558 (Tex.App.-Fort Worth, 2002 n.w.h.).

The dissent contends we should vacate the trial court's judgment and order this case dismissed. My colleague erroneously opines that Judge Gamble's only authorized action for injunctive relief under Tex. Elec.Code Ann. § 273.081 (Vernon 1986) would be to compel timely review of his application. He asserts that injunctive relief is available only to prevent or stop a violation which had "occurred and was completed well before" Judge Gamble had an opportunity to seek an injunction. The dissent has misstated Judge Gamble's reason for seeking injunctive relief. The con-

duct that precipitated this action for injunctive relief was not "the official's failure to review the application as soon as practicable." Succinctly, the Election Code violation occurred and continued to occur each time Harris County Republican Party officials refused to place Judge Gamble's name on the ballot. Accordingly, Judge Gamble had standing to seek the relief granted by the trial court and the trial court had jurisdiction to fashion an equitable remedy.

I join the court in affirming the trial court's final judgment and permanent injunction.

RICHARD H. EDELMAN, Justice, dissenting.

When construing a statute, we ascertain the Legislature's intent from the plain meaning of the actual language used. *Lenz v. Lenz,* 79 S.W.3d 10, 19 (Tex.2002). When the Legislature employs a term in one part of a statute and excludes it in another, we presume the Legislature had a reason for doing so. *Fireman's Fund County Mut. Ins. Co. v. Hidi,* 13 S.W.3d 767, 769 (Tex.2000). We do not invent a remedy the Legislature could have, but did not, specify. *State v. Roland,* 973 S.W.2d 665, 666 (Tex.1998). Thus, it is not our function to revise the Legislature's policy choices, even where a party is unfairly deprived of a remedy. *Fireman's Fund,* 13 S.W.3d at 769.

The scope of relief available under section 273.081 is specific and unambiguous: "A person who is being *harmed* or is in danger of being harmed by a violation or threatened violation of this code is entitled to appropriate injunctive relief to prevent the *violation* from continuing or occurring." Tex. Elec.Code Ann. § 273.081 (Vernon 1986) (emphases added). Section 273.081 thus applies to stop current violations and prevent future violations, but not to retract or reverse past violations which

have ceased,[1] or to prevent harm from past violations from occurring or continuing.[2] *See id.* Moreover, a complainant lacks standing to assert, and a trial court lacks jurisdiction to entertain, an injunction proceeding where no present or future violation is alleged.[3]

In this case, the only violation of the Election Code alleged or proved was the untimeliness of the party election official's review of Judge Gamble's primary ballot application, *i.e.*, the official's failure to review it as soon as practicable. This violation occurred and was completed well before Judge Gamble learned of it or had any opportunity to seek an injunction to prevent it from occurring or continuing. All of the party official's actions after discovering the discrepancy between the application and attached petitions were as section 141.032 prescribed. The official notified Judge Gamble, rejected his application, and planned to remove his name from the candidate list. The Election Code afforded the party official no other alternative. Thus, by each of the times Judge Gamble's injunction suit was subsequently filed and refiled, there were no Election Code violations to be stopped or prevented and thus none subject to injunctive relief under section 273.081. Because Judge Gamble therefore had no standing to assert, and the trial court had no jurisdiction to entertain, this injunction action, I would vacate the trial court's judgment and order the case dismissed.

---

1. The general inapplicability of injunctive relief to past violations is well recognized. *See, e.g., United States v. Or. State Med. Soc'y,* 343 U.S. 326, 333, 72 S.Ct. 690, 96 L.Ed. 978 (1952).

2. Section 273.081 could have been written so as to allow injunctive relief to prevent the *harm* from continuing, but was instead written to prevent the *violation* from continuing. We must presume that the Legislature's use of the distinct terms "harm" and "violation" in the respective portions of the statute was intentional, and we may not disregard the difference in meaning between those terms or fashion a remedy that is beyond the unambiguous scope of this provision. *See Fireman's Fund,* 13 S.W.3d at 769; *Roland,* 973 S.W.2d at 666.

3. *See, e.g., Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 109–110, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (holding that respondent lacked standing to maintain the injunction action, and that lower courts lacked jurisdiction to entertain it, and ordering its dismissal, where respondent alleged only past infractions, and not a continuing or likely future violation); *Williams v. Lara,* 52 S.W.3d 171, 184 (Tex.2001) (holding that former inmates lacked standing to pursue claims for injunctive relief, and those claims were moot, with regard to past unconstitutional conduct which the former inmates no longer faced). A lack of subject matter jurisdiction cannot be waived. *See, e.g., Waco Indep. Sch. Dist. v. Gibson,* 22 S.W.3d 849, 851 (Tex.2000).