**Opinion issued May 14, 2026**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-24-00813-CV

_____

**ANDREW SCHATTE AND ANNETTE SCHATTE, Appellants**

**V.**

**THE TRAPP TRUST, LOU TAYLOR, TRUSTEE, Appellee**

---

**On Appeal from the 133rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-27488**

---

## O P I N I O N

Homeowners Andrew and Annette Schatte appeal the trial court's denial of their request for a permanent injunction requiring an adjacent property owner, the Trapp Trust, to remove a security wall built in violation of a deed restriction. Although a jury found the Trust breached the restriction and the breach was not

excused, the trial court determined the equities weighed in favor of permitting the security wall to remain in place. The Schattes contend the trial court had no discretion to deny injunctive relief because, among other reasons, the deed restriction was properly recorded, the Trust had actual or constructive notice of the restriction, and the Trust built the security wall anyway. We reverse and remand.

## Background

In 1998, the Schattes bought a 2.55-acre lot in Houston's Shadyside subdivision. A view of Hermann Park and Mecom Fountain was the principal reason they selected the lot.

From the outset, the Schattes intended to subdivide the lot but wished to preserve their view. When they eventually sold a subdivided portion of the lot to the Robertsons in 2000 (the Property), the Schattes included in the deed a term providing that, "[w]ithin the 100-foot setback from Montrose Boulevard and Main Street, no fencing or landscaping shall exceed 40" in height."[1] The deed containing the restriction was recorded in the Harris County property records, number U573576, and the restriction was never modified.

---

[1] The lot sold to the Robertsons is located closer to the Mecom Fountain, requiring the Schattes to look across the Property to see the fountain.

In 2010, the Robertsons conveyed the Property carrying the deed restriction to the Mostyns. Nine years later, the Trust, acting in the interest of its beneficiary (an internationally famous musician), bought the Property from the Mostyns.

Because of the beneficiary's status, and for his and his family's safety, security, and privacy, the Trust desired to build a security wall around the Property's perimeter. During the purchasing process, the Trust's agents communicated the importance of security to the Mostyns, the Mostyns were not aware of the deed restriction and did not include it in their seller's disclosure, and the Mostyns' realtor informed the Trust that a security wall could be built on the property.

Before the sale closed in December 2019, a title search revealed that the Property was subject to several restrictions, including the deed restriction recorded in U573576. However, copies of the restrictions were not provided, and the Trust's agents did not independently retrieve them. During closing the trustee signed a "Deed Restriction Notice" acknowledging that the Property was subject to deed restrictions, including the restriction recorded in U573576. And the restriction recorded in U573576 was included in the title insurance policy exclusions.

Soon after closing, the City of Houston granted a permit for the construction of an eight-foot wall around the property. Before the wall was constructed, the Schattes communicated with the Trust about the restriction, as described more fully below. Nonetheless, a crew of "probably 25 or 30" people built an eight-foot-tall

3

cinderblock security wall within the 100-foot setback designated in the deed. The security wall obstructed the Schattes' view.

The Schattes petitioned for permanent injunctive relief requiring the Trust to tear down the security wall. The Schattes did not seek compensatory damages.

The matter proceeded to a jury trial, and the Trust raised four primary arguments in defense. First, the Trust argued that because the language of the deed read "fence" and not "wall," the eight-foot wall did not violate the covenant. Second, the Trust argued that, because the Schattes had allowed the prior owners of the Property to plant trees in the setback and had planted some trees themselves along the property line which had grown in the interceding twenty years, the view previously existing was now sufficiently blocked that the deed restriction no longer served its purpose. Third and relatedly, the Trust argued that because the Schattes had not enforced the deed restriction on landscaping against the prior owners of the Property, they had waived their right to enforce the restriction. The jury rejected these arguments, finding that (1) the Trust failed to comply with the deed restriction, (2) the Schattes did not waive their right to enforce the deed restriction, and (3) the Trust's failure to comply with the deed restriction was not excused by changed conditions.

The Trust's fourth argument was that the beneficiary's security concerns outweighed the Schattes' interest in maintaining their view, with the beneficiary

testifying that an associate of his had been killed in a home invasion, that his children could not play in the yard if not for the wall, and that he would "not at all" feel safe living on the Property without a wall, meaning it would not be possible for him to continuing living at the house. The Trust presented an expert witness who opined on the security needs of someone like the beneficiary, as well as the common usage of a defensive wall, with comparisons to other persons requiring significant security, including former Presidents of the United States. The jury also heard that, before and during trial, an individual breached the wall and was stopped by security and police once on the other side. On this fourth defensive issue, the jury found that "the hardship imposed on the [] Trust in complying with the Deed Restrictions" would "substantially outweigh any benefit to the Schattes derived from the enforcement of the Deed Restrictions."

Considering the jury's answer to that fourth question to be immaterial, the Schattes moved for a judgment on the verdict, arguing that the jury's factual findings on questions one through three entitled them to injunctive relief. They further argued that, to the degree the beneficiary would suffer a hardship from having to tear down the wall, that hardship was ameliorated by the fact that the beneficiary could still retain a wall around his home—just one outside the relevant setback—and that the violation of a restrictive covenant of which the Trust had notice was itself dispositive in terms of balancing the equities.

5

The trial court entered a final judgment denying the Schattes injunctive relief. The Schattes requested findings of fact and conclusions of law. The trial court granted the request, summarized as follows:

1–4: Because of his status as an international celebrity, the beneficiary is in a high-risk category and so has a heightened requirement for security.

5–14: The existing fence at the time of purchase was inadequate, the property otherwise possesses features valuable for security purposes, security was the motivating reason for the beneficiary's purchase of the property, and the beneficiary relied on assurances that the security wall could be built to inform his purchase.

15: The Trust did not have actual knowledge of the restrictive covenant prohibiting the construction of a security wall when it purchased the property.

16–37: The beneficiary has significant and valid security concerns, the wall as-is is necessary to address those concerns, and the Trust would be substantially harmed were the wall to be removed.

38–39: The purpose of the restrictive covenant was to protect the Schatte's views and the only harm from the security wall is its restriction of those views.

41: The Schattes did not enforce the deed restrictions with prior owners.

42–45: Because the life and safety of a person is more important than a view of the fountain, the hardship imposed on the Trust substantially outweighs any benefit to the Schattes from its removal, and this disproportion is of such considerable magnitude that the equities weigh in favor of denying injunctive relief to the Schattes.

The Schattes appealed.

6

**Analysis**

The Schattes argue that the trial court abused its discretion in declining to grant a permanent injunction requiring the Trust to remove the security wall because either (1) the Trust's "actual notice of the restriction requires enforcement as a matter of law" or (2) the balance of equities "overwhelmingly favor[s] enforcing the restriction[.]"

**A.     Standard of review**

The decision to grant or deny a permanent injunction "is ordinarily within the sound discretion of the trial [court], and [its] action will be reversed only when a clear abuse of that discretion is shown." *Repka v. Am. Nat'l Ins. Co.*, 186 S.W.2d 977, 981 (Tex. 1945); *see Operation Rescue-Nat'l v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 975 S.W.2d 546, 560 (Tex. 1998). In particular, although "a jury may have to settle" relevant factual disputes "about what happened," questions regarding "the expediency, necessity, or propriety of equitable relief" are for the trial court to decide, and its rulings are reviewed for abuse of discretion. *Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 428–29 & nn.53–54 (Tex. 2008) (internal quotation marks omitted). A trial court abuses its discretion by acting arbitrarily and unreasonably or misapplying the law to the established facts of the case. *Triantaphyllis v. Gamble*, 93 S.W.3d 398, 402 (Tex. App.—Houston [14th Dist.]

7

2002, pet. denied) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)).

**B.      No bright-line rule compels injunctive relief**

The Schattes first propose a rule that, absent waiver or changed conditions, a trial court must grant injunctive relief regarding the violation of a properly recorded deed restriction that gives rise to a presumption the violator had notice of the restriction. *See* TEX. PROP. CODE § 13.002 (presumption of notice). We conclude such a bright-line rule does not exist in Texas and decline to adopt one.

To be entitled to a permanent injunction, a party ordinarily "must prove (1) a wrongful act, (2) imminent harm, (3) an irreparable injury, and (4) the absence of an adequate remedy at law." *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 792 (Tex. 2020); *Dao v. Mission Bend Homeowners Ass'n, Inc.*, 667 S.W.3d 304, 317 (Tex. App.—Houston [1st Dist.] 2022, no pet.). For restrictive-covenant cases, however, there is a settled exception to the general rule: when a substantial breach of the covenant is shown, it is not necessary to show the existence of any particular amount of damage or to show that the injury will be irreparable. *Dao*, 667 S.W.3d at 317. A party seeking an injunction to enforce a restrictive covenant need "prove only that the defendant intends to do an act that would breach the restrictive covenant." *Keenan v. River Oaks Prop. Owners, Inc.*, No. 01-20-00493-CV, 2022 WL 802989, at *8 (Tex. App.—Houston [1st Dist.] Mar. 17, 2022, pet. denied) (mem. op.).

Regarding the appropriateness of granting a permanent injunction, "the court will consider the injury which may result to the defendant and the public by granting the injunction as well as the injury to be sustained by the complainant if the writ be denied." *Huynh v. Blanchard*, 694 S.W.3d 648, 688 (Tex. 2024) (quoting *Storey v. Cent. Hide & Rendering Co.*, 226 S.W.2d 615, 618–19 (Tex. 1950)). A trial court's "judgment must arise out of a balancing of equities or of relative hardships" in a restrictive-covenant case. *Cowling v. Colligan*, 312 S.W.2d 943, 946 (Tex. 1958). In determining whether it would be inequitable to enforce a restrictive covenant against a particular lot owner, the court must weigh the equities of the owner in violation of the covenant against the equities favoring other lot owners who acquired their property on the strength of the restriction. *Park v. Escalera Ranch Owners' Ass'n*, 457 S.W.3d 571, 601 (Tex. App.—Austin 2015, no pet.); *Gigowski v. Russell*, 718 S.W.2d 16, 22 (Tex. App.—Tyler 1986, writ ref'd n.r.e.). The fact that enforcing the restrictions may cause one owner greater injury does not compel denial of injunctive relief. *Gunnels v. N. Woodland Hills Cmty. Ass'n*, 563 S.W.2d 334, 338 (Tex. App.—Houston [1st Dist.] 1978, no writ).

Endorsing the Restatement (First) of Property Section 563 (1944), the Supreme Court of Texas in *Cowling* held that, when a defendant violates a restrictive covenant, a court may deny injunctive relief after balancing the equities if the disproportion between the harm the relief causes and the benefit it produces is of

"considerable magnitude." 312 S.W.2d at 946 ("The equities favoring the particular owner . . . *must* be weighed against the equities favoring [those who seek enforcement].") (emphasis added); *see also Gunnels*, 563 S.W.2d at 338. Consistent with this standard, we have held that a trial court which refuses to grant injunctive relief correcting a deed-restriction violation does not necessarily abuse its discretion if there is evidence supporting its conclusion that the harm of injunctive relief would "far outweigh" the benefits. *Woodland Trails N. Cmty. Imp. Ass'n v. Grider*, 656 S.W.2d 919, 921–22 (Tex. App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.).

We have not found an opinion applying the Schattes' proposed rule requiring injunctive relief to enforce properly recorded restrictions, but there are opinions in which courts have concluded the issue is subject to a balancing of the equities. In *Flume v. Bassett*, all lots in the subdivision were subject to recorded restrictions prohibiting "encroachments and the building of structures on the private drainage easement." No. 04-10-00876-CV, 2011 WL 4090199, at *1 (Tex. App.—San Antonio Sept. 14, 2011, no pet.) (mem. op.). After one property owner sued another over her construction of flowerbeds, a hot tub, and a deck in the easement, a bench trial was held, and the trial court denied the plaintiff's request for injunctive relief. *See id*. at *4.

On appeal, the court acknowledged that "[i]n determining whether it would be inequitable to enforce restrictive covenants against a particular lot owner in a

10

residential subdivision, the equities of the defendant lot owner must be weighed against the equities favoring the plaintiff (and other lot owners) who purchased or acquired their properties on the strength of the covenants." *Id.* at *3 (internal quotation marks omitted). Despite evidence that the easement in question was encroached, the trial court's denial of injunctive relief was affirmed. *See id.* at *4 ("We hold the trial court did not abuse its discretion in declining to award injunctive relief to Flume because the record contains evidence the encroachment does not impede the flow of water through the drainage easement, and that the cost to Bassett to remove the additions would be great.").

In *Fox v. O'Leary*, the plaintiff sought injunctive relief to enforce properly recorded restrictions, but the trial court denied the claim because of laches. No. 03-11-00270-CV, 2012 WL 2979053, at *1 (Tex. App.—Austin July 10, 2012, pet denied) (mem. op.). After concluding laches did not apply, the court addressed the standard the trial court would use when considering injunctive relief on remand:

> The trial court did not balance the equities and enter findings of fact relating to whether the injunctive relief sought by Fox is available under the circumstances, nor were there fact findings regarding whether, as some evidence adduced at trial suggests, equitable relief short of requiring strict compliance with the deed restrictions may be appropriate. To determine whether enforcing the restrictive covenants would be inequitable toward a particular property owner, the trial court must weigh the equities favoring that property owner against the equities favoring the other property owners who acquired their property subject to those restrictions. We therefore remand the cause to the trial court in order to provide it with the opportunity to balance the equities

11

and make a determination, in the first instance, as to whether Fox is entitled to injunctive relief.

*Id*. at \*8 (citation omitted).

These cases support a balancing of the equities when deed restrictions are violated, which we consider next. We leave for the high court whether to adopt a new bright-line rule requiring injunctive relief to enforce properly recorded restrictions. *See Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554, 565 (Tex. App.—Austin 2004, no pet.) ("As an intermediate appellate court, we are not free to mold Texas law as we see fit but must instead follow the precedents of the Texas Supreme Court unless and until the high court overrules them or the Texas Legislature supersedes them by statute.").

## C.     Balancing the equities

The Schattes next contend the trial court abused its discretion in denying them injunctive relief because "the equities overwhelmingly weigh in favor of injunctive relief" and there is "no basis to find a 'disproportion between harm and benefit of considerable magnitude' that would warrant the denial of injunctive relief," quoting *Cowling*.

Turning to the equities, we observe several undisputed facts. The view of Mecom Fountain and Hermann Park was an essential feature in the Schattes' decision to buy the original lot, and they included a deed restriction protecting that view when they conveyed a subdivided portion of the lot to the Robertsons. *See N.*

12

*Cypress Med. Ctr. Operating Co., Ltd. v. St. Laurent*, 296 S.W.3d 171, 175 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (observing that "every piece of real estate is unique" (citations omitted)). When the Trust purchased the Property in December 2019, the Property was subject to that deed restriction, which was filed in the property records. And the Trust's agents admitted that the Trust received documents disclosing the restriction; the trustee signed a "Deed Restriction Notice" acknowledging that the Property was subject to the restriction, and the title insurance policy expressly excluded the restriction.

It is additionally undisputed that, on January 13, 2020, Annette Schatte sent an email to inform the real estate agents involved in the Property's sale about the deed restriction. This email was forwarded to the Trust's real estate agent, Zarina Lawson, who had spent multiple years looking for a property in Houston for the beneficiary. On January 14, Lawson texted with the Mostyns' agent about the deed-restriction issue. The Schattes and their attorney and the Trust's attorneys and Lawson participated in a meeting on March 13, 2020, to discuss resolution of the wall issue. On March 16, 2020, the Trust's attorney sent an email to the Schattes' attorney, expressing that, if they allow the wall to be built, the beneficiary will have the wall removed when he sells the Property. The same day, the Schattes' attorney rejected the offer, explaining that the Trust did not have to purchase the Property, the Trust could have reviewed the recorded restrictions before closing, and the

Schattes will take legal action if the Trust proceeds with construction. These communications all occurred before the wall was constructed. Lawson testified that, even though she learned of the restrictions through the January 13 email, she allowed her "client to put up the wall."

The trial court found that the Trust "did not have actual knowledge of [the] restrictive covenant . . . when it purchased the Property." The Schattes argue this finding rests on a legally erroneous notion of actual knowledge under the circumstances, because an "instrument that is properly recorded in the proper county is . . . notice to all persons of the existence of the instrument." TEX. PROP. CODE § 13.002; *see also Flack v. First Nat'l Bank of Dalhart*, 226 S.W.2d 628, 631 (Tex. 1950) (actual notice "embraces knowledge of all those facts which reasonable inquiry would have disclosed, the duty of inquiry extending only to matters that are fairly suggested by the facts really known"). When constructive notice is obtained through public records, it creates "an irrebuttable presumption of actual notice." *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981). And a "person is charged with constructive notice of the actual knowledge that could have been acquired by examining public records." *Id.*; *see also HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 887 (Tex. 1998) ("When the legal device of constructive notice is employed, a person is deemed to have actual knowledge of certain matters.").

We recognize the trial court's finding can be interpreted as the Trust literally (without applying the law-based presumption of actual knowledge) did not have actual knowledge of the restrictive covenant when it purchased the Property in December 2019, which may be true. But the trial court could not ignore the undisputed facts requiring application of the presumption, not to mention the multiple communications between the parties about the restriction *before* the wall was constructed. *See Triantaphyllis*, 93 S.W.3d at 402 (including misapplication of law among the ways a trial court may abuse its discretion). That is, in balancing the equities, the court was not at liberty to consider that the Trust lacked actual knowledge of the deed restriction before purchasing the Property, while disregarding that the Trust had constructive knowledge of the deed restriction before purchasing the Property and actual knowledge before building the wall. The trial court abused its discretion by not considering these facts and the legal presumption in balancing the equities.

The trial court also found that the previous owner of the Property planted trees in the setback area which impacted the Schattes' view of the fountain and park, but the Schattes did not attempt to enforce the restriction against the previous owner. Although the evidence supports a finding that trees had been planted in the Schattes' view of the fountain and park, the trial court could not, in balancing the equities, disregard the jury's finding on waiver. Per the charge instructions, the jury's

15

rejection of the Trust's waiver and changed-conditions defenses meant the jury found the Schattes could still "secure in a substantial degree the benefits sought to be realized through the restriction" before the wall was constructed—in other words, the restriction's purpose of preserving the Schattes' view of the fountain remained when the Trust bought the Property and the Schattes had not waived their right to enforce the restriction. The trial court abused its discretion to the extent it ignored the jury's finding on waiver.

We conclude the trial court abused its discretion by not considering in its balance of the equities that (1) the Trust was legally presumed to know about the restriction when it bought the Property and in fact did know about the restriction before the wall was built, and (2) the jury found the Schattes could still "secure in a substantial degree the benefits sought to be realized through the restriction" before the wall was constructed and had not waived their right to enforce the restriction. We will reverse and remand the case for the trial court to conduct further equitable proceedings and re-balance the equities.[2] *See* TEX. R. APP. P. 43.2(d); *Fox*, 2012 WL 2979053, at *8. We sustain the Schattes' issue.

---

[2] We have not set forth herein all the possible factors the trial court may consider in re-balancing the equities, which we note include public-policy concerns such as homeowners' right to security and the potential erosion of deed-restriction rights if purchasers are allowed to violate properly recorded restrictions. *See Huynh*, 694 S.W.3d at 688 (considering public benefits from enjoining and not enjoining violative conduct); *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 339 (Tex. 2020) (recognizing legislative

16

## Conclusion

We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

Andrew Johnson
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.

---

enactments are "expressions of public policy" and that the "legislature has told us that a restrictive covenant not proscribed by statute should be 'liberally construed to give effect to its purpose and intent'" (quoting TEX. PROP. CODE § 202.003(a))).